## WILHELM *v.* WOODCOCK, ET AL.

INJUNCTION.—EXECUTION.—Cases, to declare a deed absolute on its face a mortgage, must be determined by their own special facts. These facts should be of clear and decisive import; they should lead the court to a satisfactory conclusion as to what the parties intended or meant by their conduct, so that it may be enforced according to their intent.

INJUNCTION.—The owner of real property has a right to restrain sale thereof under a judgment against a third party, who has been privy to the title, which is not a lien thereon, and which judgment such owner is not liable to the payment of.

APPEAL from Benton County.

*M. S. Woodcock and R. S. Strahan*, for appellant.

*J. R. Bryson and John Burnett*, for respondent.

By the Court, THAYER, J.:

This appeal is from a decree rendered in favor of the respondent, and against the appellants, enjoining them from selling certain real property, consisting of two hundred and seventy-seven acres of land, situated in the county of Benton, State of Oregon, by virtue of an execution issued out of the said circuit court upon a judgment at law, recovered in favor of the appellant, Woodcock, against one David Huggins, and delivered to the appellant, King, sheriff of said county of Benton, for service. It appears from the pleadings in the suit, that on the 1st day of February, 1876, said Huggins was the owner of said real property, having the legal title in fee, to a hundred and forty acres thereof, and the equitable title to the remainder, the legal title thereof being in one Alexander Lamb, in trust for Huggins; that on said 1st day of February, 1876, said David Huggins executed, in due form, a deed to said one hundred and forty acres, to one John Rickard, and at the same time the said Alexander Lamb executed a deed to said one hundred and thirty-seven acres, to said Rickard; that said deeds were absolute in terms, and each contained a covenant of warranty; that at the same time said John Rickard executed to the said Huggins an agreement under seal, whereby he agreed to sell to the said H. the two parcels of said real property for two thousand five hundred and thirty-six dollars, gold coin, in consideration of which, said H. agreed to pay to the said R. on the first day of February, 1877, said sum of $2,536.00; also to pay all state, school and county taxes or assessments of whatsoever nature, which were or might become due on the said premises, and which said agreement further provided that in case said Huggins neglected to comply with

his said agreement, the said Rickard should be released from all obligations in law or equity, to convey said property, and that said H should forfeit all right thereto, and that said R, on receiving such payment as provided in said agreement, would execute a good and sufficient deed to said premises, in fee simple, to the said H. It further appears from said pleadings, that afterwards, and on the 16th day of January, 1878, said Rickard and his wife executed a deed to said premises to the respondent, Adam Wilhelm, and that said Huggins and his wife signed and sealed the same, and that afterwards, and on the —— day of December, 1879, said respondent, Wilhelm, executed a deed to the premises to one Albert Humphrey, who executed a mortgage thereon to said respondent for the sum of twelve hundred and fifty-three dollars; that said mortgage was subsequently foreclosed; that a sale of said premises, under said foreclosure, was had, and on the —— day of February, 1882, a sheriff's deed to the premises was executed to the respondent; that on the 14th day of April, 1879, the appellant, William C. Woodcock, recovered in said circuit court, a judgment against the said David Huggins, for the sum of twelve hundred and seventy-nine dollars and ninety-six cents, U. S. gold coin, with certain interest which had accrued upon his claim, and the costs of action, which having been docketed in the office of the clerk of said court, he afterwards, and on the 25th day of October, 1882, caused an execution to be issued thereon, and upon which said appellant, Sol. King, as such sheriff, was proceeding to sell such premises, when the suit herein was commenced to restrain such sale.

The appellants claim that the transaction between said Rickard and said Huggins in regard to the execution of said deed by Huggins, and the deed from Lamb to Rickard

and the agreement to sell the premises to Huggins, was a mere mortgage of said property, to secure the payment of money due from Huggins to Rickard, and that the deed from Rickard and his wife to respondent, in which Huggins and wife joined, by an understanding and agreement between all the parties, operated only as a substitution of respondent in place of the said Rickard, and constituted him a mortgagee of the premises, and that Huggins still remained the mortgagor; and that when the deed was executed to Humphrey, by a like understanding he also became mortgagee thereof, Huggins thereby becoming mortgagor to him, until the foreclosure of the mortgage executed by Humphrey to respondent, and the repossession of the title to the premises by the latter, under the foreclosure proceeding. The respondent, on the contrary, claims that the transaction between Rickard and Huggins, in reference to said property, was, as the deeds import, an absolute sale by the former to the latter, and an agreement to re-sell the property upon the terms specified in said agreement under seal, before referred to, and that the second deed of transfer by Rickard to the respondent, Wilhelm, and the signing and sealing of the same by Huggins and wife, transferred and conveyed to respondent the complete and absolute title to the premises. A question has arisen in the outset, as to whether the appellants, if the transactions were, in fact, mortgages, could properly proceed in the manner attempted, by levy and sale of the premises under the execution issued upon the judgment at law. The appellants' counsel seemed inclined to concede upon the argument, that if the legal title to the premises had passed out of Huggins, by virtue of the several deeds so executed as aforesaid, he had no such interest remaining as could be reached by the execution; but he in-

sisted that if such deeds were intended as a security for a debt, no matter what their form was, the legal title still remained in Huggins. We have considered that question to some extent, and are of the opinion that the position of the respondents' counsel upon it is a very strong one, more particularly under our system of jurisprudence, where the line of demarkation between law and equity is more strongly defined than it is in those states in which the distinction between a mortgage at law and in equity, has been wholly obliterated; but from the view we have taken of the case, we have concluded that it is not necessary to decide the question at this time. In the case of *Stephens* v. *Allen*, et al, decided at the October term, 1883, this court, following a great number of adjudicated cases upon the subject, held, that, "as cases of this character must be determined upon their own special facts, it is admitted that these facts should be of clear and decisive import; they should lead the court to a satisfactory conclusion as to what the parties intended and meant by their contract, so that it may be enforced according to their intent." Applying this rule to the facts and circumstances of the several transactions referred to above, we are unable to conclude that the parties meant, or intended by their contracts, a conveyance as a security for the payment of money or for the performance of any other act. The transaction between Rickard and Huggins, as far as shown by the evidence, was a purchase by the latter from the former of his crop of wheat, and in payment thereof, he conveyed to him the premises in question. It is true, Rickard executed back to Huggins, a contract, agreeing to re-sell to him the premises as before mentioned, but that circumstance alone does not render the transaction a mortgage. Standing by itself, it is not inconsistent with a sale of the

premises, and an agreement to re-purchase them. All the parties to the transaction testify that such was the intention, and there are no circumstances calculated to impress upon it a different character than that of a conditional sale of the property. A person has a right to buy land in satisfaction of a precedent debt, or for a consideration then paid, and at the same time contract to re-convey the lands upon the payment of a certain sum. Such an affair may or may not be a mortgage; that depends upon what the parties intended it. (Jones on Mortgages, sec. 260.)

If the amount of the alleged purchase price of the premises had been greatly disproportionate to their real value, it would have afforded a strong circumstance that a sale was not intended; but the appellant's counsel makes no such claim; nor is it proved that any debt arising out of the transaction ever existed in favor of Rickard against Huggins. No credit appears to have been given upon the sale of the wheat, and the affair can, consistently with the facts, be regarded as an exchange of the premises for the wheat.. It is true that Rickard exacted from Huggins, at the time he executed to him the said agreement under seal to re-convey said premises, a chattel mortgage upon a portion of the wheat to be grown thereon as a security for the payment of the $2,536 stipulated in said contract for reconveyance, and that may be a circumstance tending to show that the parties meant that the conveyance of the premises should only operate as a mortgage; but in view of the positive testimony of both Rickard and Huggins that a sale of the premises from the latter to the former was intended, and the inconclusiveness of the circumstances relied on to establish the contrary fact, the court would have great difficulty, even as between these parties, in deciding that the

conveyance was only a mortgage. If, however, the court could properly hold that such was the fact, it would still have to go a step farther and hold that the respondent, who purchased from Rickard and received from him an absolute deed to the premises, which was also signed, sealed and acknowledged by Huggins and wife, maintained the same relation to the property. In the latter case, there is only slight evidence showing that Wilhelm intended anything other than an absolute purchase of the premises. Huggins testified in effect that there was an understanding between him and Wilhelm that he was to have a chance to redeem the place and pay to Wilhelm the money he paid for it; and that he had an understanding with Humphrey to buy the place of him; and when asked whether there was not an obligation, verbal or written, on his part to pay to Wilhelm the amount of money which he paid to Rickard for the land in controversy, answered, " that there was nothing binding that he knew of." There is also testimony in the case as to what Huggins had said to William C. Woodcock, one of the appellants, and also to M. S. Woodcock, one of his attorneys in the suit, regarding the transaction, and in which he admitted that the arrangement between him and Wilhelm was that he was to have the land from Wilhelm whenever he paid him back the money that he, Wilhelm, had advanced on the land, and, also, as to what Wilhelm himself said to them, which was in effect that he, Wilhelm, had advanced the money to Rickard for Huggins. The admissions of Huggins were unimportant farther than that they tended to impeach his testimony. They could not be used as affirmative proof to establish the issue on the part of appellants. The admissions of Wilhelm were competent, but entitled to little weight unsupported by direct

proof as to what the arrangement was between him and Rickard, or of facts showing that a mortgage of the property was intended by them; besides, Wilhelm in his testimony denies them outright. We think the evidence insufficient to establish that the transaction between the respondent and Rickard was a mortgage of the property, as claimed by the appellants, or that Huggins had any interest, legal or equitable, in it. The appellants' proceeding, therefore, to subject it to the payment of the judgment in favor of the appellant, William C. Woodcock, and against said David Huggins, was unauthorized.

The appellants' counsel suggested at the hearing, a doubt as to whether a suit upon the part of the respondent to enjoin the proceedings upon the execution, was maintainable. We have considered that question and are satisfied that the owner of real property has a right to restrain the sale thereof under a judgment against a third party who has been privy to the title which is not a lien or charge thereon, and which judgment such owner is in no wise liable to the payment of. Such a proceeding necessarily clouds his title, creates a distrust as to its validity and operates to his injury, for which he would have no adequate remedy at law. The right to maintain such a suit has been frequently recognized by this court, and, in our opinion, is maintainable in accordance with equitable doctrine.

The judgment appealed from is, therefore, affirmed, and the usual decree will be entered in accordance with the course and practice of this court in such cases.