[Civil No. 1589. Filed January 3, 1919.]

[177 Pac. 27.]

CHARLES R. JARVIS, Appellant, v. CHANSLOR & LYON COMPANY, a Corporation, and R. L. NEWMAN, Sheriff of Navajo County, State of Arizona, Appellees.

1. ESCROWS—EFFECT—TITLE.—Where a deed is placed in escrow, the grantor holds the legal title and the grantee the equitable title.

   [As to creation and requisites of escrows, see note in 130 Am. St. Rep. 912.]

2. PLEADING—DEMURRER—ADMISSION.—On demurrer the allegations of the complaint must be taken as true.

3. ESCROWS—DELIVERY BY DEPOSITARY.—Neither Civil Code of Arizona of 1913, paragraph 2080, nor any other statute, requires an escrow deed to be placed of record before its second delivery.

4. ESCROWS—EFFECT—TRANSFER BY GRANTEE.—A grantee in a deed in escrow could transfer his equitable interest prior to delivery and recordation of the escrow deed.

5. FRAUDULENT CONVEYANCES—PURCHASER FOR VALUE.—The fact that a buyer at one time had some interest in land did not make it available to his creditors long after he sold to a purchaser for value.

6. EXECUTION—RESTRAINING EXECUTION SALE.—Where grantee in deed in escrow transferred his equitable interest to plaintiff prior to an attachment by creditors, an injunction will be issued to restrain a sale of the property under execution; the test being whether purchaser at such sale would be entitled *prima facie* to judgment in an action to recover the property upon exhibiting in evidence his title derived from the sale, in view of Civil Code of Arizona of 1913, paragraphs 1363, 1408.

APPEAL from a judgment of the Superior Court of the county of Navajo. Sidney Sapp, Judge. Reversed and remanded, with directions.

Messrs. Jones & Jones and Mr. W. E. Ferguson, for Appellant.

Mr. C. H. Jordan, for Appellees.

ROSS, J.—In civil cause No. 559, in the superior court of Navajo county, in which Chanslor & Lyon Company were plaintiffs and the Northern Transportation Company, a copartnership composed of Arthur and Charles Jarvis, were defendants, the plaintiffs suing to recover on debt, on August 18, 1916, caused to be issued and levied upon lots 23, 24, 26, 27, 28, 29 and 30, and a strip 15 feet and 9 inches in width off of the west side of lot 31, all in block 7, in the town of Holbrook, Navajo county, Arizona, to secure any judgment that might be obtained, a writ of attachment, and thereafter, on February 2, 1917, judgment was duly entered in favor of plaintiffs against defendants in said cause, and at the same time the attachment lien was foreclosed and the attached property ordered sold to satisfy the judgment.

Appellant, Charles R. Jarvis, instituted this suit to enjoin the defendants and appellees herein, Chanslor & Lyon Company and R. L. Newman, sheriff, from selling said property under execution, alleging possession and ownership of the property from the first day of March, 1916, a date long anterior to the date the writ of attachment was levied thereon. Also, that he had no plain, speedy and adequate remedy at law, and irreparable damage.

It is seen that the purpose of the suit is to prevent a cloud from being cast upon the appellant's title. A general demurrer by the appellees to a complaint setting forth the above facts was sustained by the court, whereupon the appellant filed an amended complaint, pleading the evidence of his title, and, among other things, he showed:

1. That on February 6, 1913, one Julius Wetzler and wife made their deed of said lots to Charles Jarvis, one of the defendants in cause No. 559, and placed the same in escrow with the Navajo-Apache Bank & Trust Company.

2. That on March 1, 1916, and before the expiration of the escrow, Charles Jarvis executed his deed conveying all his equity in said lots to Charles R. Jarvis, which said last-mentioned deed was also placed in escrow, where it remained until November 22, 1916, when it and the deed from Wetzler

and wife were placed of record in the recorder's office of Navajo county.

This amended complaint was likewise held insufficient, but on what ground we are left at sea. From a judgment sustaining the demurrer to amended complaint and dismissing the action, this appeal is prosecuted.

The record title to this property remained during all the times mentioned herein in the grantor, Wetzler, until the deed from him to Charles Jarvis was placed of record on November 22, 1916. He also during all that time held the legal title to said property. Charles Jarvis, by virtue of the escrow agreement, was the equitable owner of the lots until on March 1, 1916, when he conveyed by deed all his equity therein to Charles R. Jarvis. A very clear and satisfactory presentation of the respective titles of the grantor and grantee in an escrow deed is discussed in 10 R. C. L. 627, section 10, and it is there shown that one holds the legal and the other the equitable title. Charles R. Jarvis was substituted in the escrow for Charles Jarvis and became the owner of the lots subject only to the performance of the conditions of the escrow. The escrow deed from Wetzler is shown to have been delivered on November 22, 1916, at which time he as grantor parted with all title, both legal and equitable. To whom did it inure? His grantee, Charles Jarvis? No, for the reason that Charles Jarvis had, on March 1, 1916, sold all his title and interest in the property to Charles R. Jarvis. When the deed from Wetzler was delivered and recorded, the title was completed in Charles R. Jarvis on the principle that an after-acquired legal title by the grantor inures to the benefit of the grantee.

The appellees suggest no legal reason why the sale of his equity in lots by Charles Jarvis to Charles R. Jarvis was not valid and binding. It was made, if we are to believe the complaint—and on demurrer we must do so—March 1, 1916, long before the writ of attachment was levied; the levy being in August, 1916. Therefore, under the admitted facts, at the time the levy was made, Charles Jarvis had no interest in the lots. At that time the legal title was in Wetzler and the equitable or beneficial title was in Charles R. Jarvis.

We have no statute that requires the escrow deed from Wetzler to Charles Jarvis to be placed of record before its second delivery. Paragraph 2080, Civil Code of 1913, does

not cover the case.   Nor would the recordation or the lack
of it affect the right of the grantee therein to transfer his
equitable interest, or make his interest less or more amenable
to attachment by his creditors.   It was liable to be subjected
to his debts by attachment or execution as long as it was his,
but no longer.   The fact that he at one time had some interest
in the lots did not make them available to his creditors long
after he sold to a purchaser for value, and such Charles R.
Jarvis appears to be from the complaint, when tested by
demurrer.

The question, therefore, is: Will a court of equity interfere,
at the instance of the owner, to prevent an execution sale of
his property when it clearly appears that the execution debtor
has no title or interest in the property threatened to be sold?
This depends upon whether the purchaser at such sale, in an
action to recover the property, would be entitled *prima facie*
to judgment upon exhibiting in evidence his title derived
from the sale.   If some evidence be required to defeat his
title, then it is a cloud, and equity will interfere to prevent
it if it has not already been cast, or will remove it if already
cast.   At no time did the debtor, Charles Jarvis, have other
than an equitable interest in the lots; but, under the laws of
Arizona, such interest could be levied upon by writ of attach-
ment and sold as other property (paragraphs 1408 and 1363,
Civil Code of 1913), and the purchaser at the sale get what-
ever interest the debtor had.   Extrinsic evidence would cer-
tainly be necessary to show that Charles Jarvis had parted
with his interest at the time of the levy of the attachment
in order to defeat a recovery by the purchaser at the sheriff's
sale, since he would deraign title from the same source, to
wit, Wetzler.   We think the facts bring this case clearly
within the rule entitling the plaintiff to injunctive relief.
5 R. C. L. 662, § 34; *Pixley* v. *Huggins,* 15 Cal. 129; *Roman
Catholic, etc.,* v. *Shipman,* 69 Cal. 586, 11 Pac. 343; *Bell* v.
*Murray,* 13 Colo. App. 217, 57 Pac. 488; *Wilhelm* v. *Wood-
cock,* 11 Or. 518, 5 Pac. 202 (206); *Yount* v. *Hoover,* 95 Kan.
752, Ann. Cas. 1918C, 148, L. R. A. 1915F, 1120, 149 Pac. 408;
4 Pom. Eq. Jurisp., 3d ed., § 1399.

Appellant has a right under the law to a judicial deter-
mination of the challenge of his title implied in the threatened
sale of his property to satisfy the debt of another.   If he lies
by and takes no steps to prevent the sale, a sheriff's deed to

his property will be placed of record, his title will be clouded and the value of his property lessened. If he would sell it or use it as security to raise money, he must first resort to the courts to have the cloud removed. Surely no good reason exists requiring him to wait for a determination of his rights until after the wrong is wrought. Rather, it would seem to be to the interest of both the execution creditor and the owner of the land to have their respective claims adjudicated before a sale of the property rather than after, and, so far as the court is concerned, it can make little difference, for sooner or later the question must be tried out and determined according to the rules and principles of equity.

We think the complaint stated facts sufficient to entitle the appellant to the relief demanded, and that the court erred in sustaining a general demurrer thereto.

The judgment is reversed and the case remanded, with directions that such further proceedings be had not inconsistent with this opinion.

CUNNINGHAM, C. J., and JOHN WILSON ROSS, J., concur.

Authorities discussing the question of delivery of deed in escrow as a change of title or interest are collated in a note in 38 L. R. A. (N. S.) 142.