474 P.2d 46

**The VALLEY NATIONAL BANK of Arizona, a national banking association, Appellant,**

**v.**

**Jean O'Brien HAY, Appellee.**

**No. I CA–CIV 1161.**

Court of Appeals of Arizona,
Division 1,
Department A.

Sept. 8, 1970.

Rehearing Denied Oct. 5, 1970.
See 475 P.2d 9.
Review Denied Dec. 15, 1970.

Snell & Wilmer, by Warren E. Platt and Gary H. Fry, Phoenix, for appellant.

Charles C. Stidham, Phoenix, for appellee.

DONOFRIO, Presiding Judge.

This is an appeal by the Valley National Bank, the plaintiff in the Superior Court, from a final order denying plaintiff's petition to hold defendant Jean O'Brien Hay, appellee, in contempt of court, and from an order adjudging appellee Hay the trustee for the benefit of ᛫er children of a $\frac{24}{64}$ interest in certain residential property.

The bank originally brought the action to collect the principal and interest owing on certain promissory notes. These notes were secured by the written guarantee of, among others, the defendant Mrs. Hay. The bank was given a partial summary judgment of $167,196.65 against the several defendants, including Mrs. Hay.

To satisfy the judgment the bank sought to reach some funds Mrs. Hay had on deposit with a bank in Switzerland. It was in connection with this deposit that the order to show cause for contempt arose. The court had ordered Mrs. Hay to transfer the money in Switzerland to the plaintiff. When she refused, the petition to hold her in contempt was filed by the plaintiff. After hearing, the trial court denied the petition and the plaintiff has made the correctness of that ruling part of this appeal. Since the appeal, however, Mrs. Hay's Swiss bank account has been applied to the judgment, rendering moot the question of whether she should be held in contempt. We now deem it unnecessary to consider that phase of the appeal. Board of Supervisors, Pima County v. Robinson, 105 Ariz. 280, 463 P.2d 536 (1970).

The bank also sought to satisfy its judgment by issuing a writ of execution against a piece of residential property located in Scottsdale, Arizona, which real property appeared of record in Mrs. Hay's name. After the writ was issued the Sheriff noticed the property for sale. After the issuance of the writ of execution and before the sale, Mrs. Hay filed a petition to have her interest in the property determined. This was done so that only her interest as judgment debtor would be subject to sale on the execution as provided in A.R.S. § 12–1622, subsec. H. After a hearing the court determined that she was the trustee for the equal benefit of her children of a $\frac{24}{64}$ interest, or in other words, that a $\frac{3}{8}$ undivided interest in the property was owned by the children and the remaining $\frac{5}{8}$ by Mrs. Hay.

As the parties have presented the matter on this appeal, there remains only one very limited issue, namely, whether the trial court erred in holding that Mrs. Hay was trustee for the benefit of her children of the $\frac{3}{8}$ interest in the property.

The facts as presented at the hearing, and about which there appears to be no dispute, show that the property was conveyed by warrant deed to Mrs. Hay and her husband on December 9, 1958. This deed was recorded on February 3, 1959. On March 21, 1966 Mr. Hay quitclaimed all his interest in the property to Mrs. Hay so that at

the time the writ of execution was issued the property stood solely in the name of Mrs. Hay.

It was appellee's position that her children's interest arose by virtue of the fact that $24,000 of the down payment on the aforementioned real property came from her children's funds and was paid on their behalf. This amount is the sum represented by eight checks written on the account of William J. O'Brien, the children's grandfather, and made payable as follows:

| Amount | Payee | Date |
|---|---|---|
| $3,000 | Patricia L. Hay-Jean P. Hay, Custodian | Dec. 12, 1958 |
| 3,000 | Sally J. Hay-Jean P. Hay, Custodian | Dec. 12, 1958 |
| 3,000 | Nancy Jo Hay-Jean P. Hay, Custodian | Dec. 12, 1958 |
| 3,000 | Jane Anne Hay-Jean P. Hay, Custodian | Dec. 12, 1958 |
| 3,000 | Patricia L. Hay-Jean P. Hay, Custodian | Jan. 8, 1959 |
| 3,000 | Sally J. Hay-Jean P. Hay, Custodian | Jan. 8, 1959 |
| 3,000 | Nancy Jo Hay-Jean P. Hay, Custodian | Jan. 8, 1959 |
| 3,000 | Jane Anne Hay-Jean P. Hay, Custodian | Jan. 8, 1959 |

All of these checks were endorsed in the name of each child "by Jean P. Hay, Custodian". Mrs. Hay testified, on direct examination, concerning the disposition of these funds:

"Q What did you do with the $24,000?

"A Well, I paid it to Kuhns in Colorado, who are his trustees for Miss Roosevelt. [vendor]

"Q Was that part of the down payment on this house?

"A Yes, sir.

"Q What was your purpose in doing that?

"A The house belonged to the children, in the main.

"Q Was it a place at which you bought for their benefit?

"A Yes, sir."

Approximately six months later, and ten years before the Superior Court hearing the appellee wrote a letter regarding the transaction. At the time it was offered in evidence no objection was made concerning its authenticity. That letter reads:

"June 2, 1959

"Mr. William J. O'Brien,
8 South Michigan Ave.,
Chicago 3, Ill.

Dear Bill:

As administrator of my estate, I want you to have this direction in your files so that ultimately you will carry out Dad's wishes and plans for my children.

Dad has given each of the four children $3,000.00 in 1958, also in 1959, or a total of $24,000.00. Because of the inadequate and disagreeable educational facilities at Rock Springs, Wyoming, I decided to purchase a home at Scottsdale, Arizona. As custodian of the monetary gifts to the children from Dad, I invested this $24,000.00 in the house at Scottsdale so that they would receive a good education and have a beautiful home in which to develop themselves.

In the event of my death and if the ownership of the house at 6330 East Montecito Ave., Scottsdale, Arizona, still remains in the name of Joe and myself, I direct you to liquidate the house and withhold this $24,000.00 for the benefit of the children equally, that is, $6,000.00 for each, investing this money in such securities as you see fit until their maturity.

As time goes on and the children do reach their maturity, I will attempt to return to them or their account, depending upon their ages, the money that has been given to them by Dad in my care.

With love,

As always,

/s/ Jean"

On appeal and at the hearing it was urged that the letter is self-serving and therefore

of little probative value. An objection was also made that the letter is hearsay.

█ The fact that offered evidence is self-serving will not exclude it unless there is some other independent ground for objection. Richfield Oil Co. v. Estes, 55 Ariz. 81, 98 P.2d 851 (1940); M. Udall, Arizona Law of Evidence, § 12 at 26–27 (1960).

█ Concerning the hearsay objection, we believe the hearsay rule is inapplicable, the letter being within the category of declarations offered as circumstantial evidence of state of mind. When a person's intent or other mental state at a particular time is in issue, evidence of his own declarations indicative of his mental state made at or near the time in issue is admissible. M. Udall, supra, § 173 at 353. From an examination of the record, we conclude that the letter was properly admitted.

In the order determining interest, the trial court made, inter alia, the following finding:

"5. That by reason of the circumstances surrounding the acquisition of this property, the Petitioner holds as trustee for the benefit of her four children $24/64$ths interest therein (same being an undivided $3/8$'s interest)."

If a trust arose as a result of the transactions concerning the residential property, it was a resulting trust. The Restatement of Trusts provides:

"A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of." Restatement (Second) of Trusts § 404 (1959)

More specifically, the fact situation with which we are here concerned is characteristic of a "purchase money resulting trust"

which is defined in the Restatement as follows:

"Where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid, except as stated in §§ 441, 442 and 444." Restatement (Second) of Trusts § 440 (1959)

█ In the instant case the transfer of the residential property was made to Mr. and Mrs. Hay, but $24/64$ of the purchase price was paid by the children, i. e., from the proceeds of the checks written by the children's grandfather, as set forth above. On these facts appellee argues that a resulting trust arose in favor of the children so that a $24/64$ or $3/8$ interest in the real property was not subject to attachment by the appellant-judgment creditor.

Appellant argues that a resulting trust did not arise, however, because the $24,000 used as part of the down payment was a loan which appellee was obligated to repay. This situation is also provided for in the Restatement:

"Where a transfer of property is made to one person and the purchase price is advanced by another as a loan to the transferee, no resulting trust arises." Restatement (Second) of Trusts § 445 (1959)

In support of its argument in this regard appellant points to the last paragraph of appellee's letter, supra, which reads:

"As time goes on and the children do reach their maturity, I will attempt to return to them or their account, depending upon their ages, the money that has been given to them by Dad in my care."

Armstrong v. Blalack, 46 Ariz. 507, 52 P.2d 1183 (1935) is cited by the appellant as support for its position that the children's funds were advanced as a loan, thereby negativing a resulting trust. That case, citing Restatement of Trusts § 445, is distinguishable from the case at bar. In Armstrong the plaintiff-lender alleged that he expected to be reimbursed for separate property funds advanced to his wife as part

payment on real property, rather than intending the sum as a gift, the title to the realty having been taken in the name of the wife alone. In that case it was stipulated by the transferor that he considered the transaction to be a loan. Here, the facts are quite different, as there is merely an incidental suggestion by the *transferee* that she would "attempt" to return the purchase money to the children or to "their account". It would appear that both Armstrong and the Restatement, § 445, supra, contemplate a situation in which the *transferor* intends the transfer to be a loan.

We seriously doubt whether under the facts of this case the children could be considered transferors, as the facts indicate the children had no knowledge of the transaction. Furthermore, at the time of the transaction, none of the Hay children had reached majority as defined in Arizona. A.R.S. § 1–215, subsec. 12. Thus, because all four children were at that time minors, a serious question would arise as to the children's capacity to enter into a binding loan contract. Valley Nat. Bank of Phoenix v. Glover, 62 Ariz. 538, 159 P.2d 292 (1945); Worman Motor Co. v. Hill, 54 Ariz. 227, 94 P.2d 865 (1939). The evidence reasonably supports the conclusion that the receipt of the $24,000 purchase money was not in the nature of a loan.

■ Appellant also argues that no interest in real property is enforceable against third parties unless such interest is created by written instrument and recorded. A.R.S. §§ 33–401 and 33–412 are cited as applying to the transactions here involved. A.R.S. § 33–401 provides:

"A. No estate of inheritance, freehold, or for a term of more than one year, in lands or tenements, shall be conveyed unless the conveyance is by an instrument in writing, subscribed and delivered by the party disposing of the estate, or by his agent thereunto authorized by writing.

"B. Every deed or conveyance of real property must be signed by the grantor and must be duly acknowledged before some officer authorized to take acknowledgments."

Appellee contends that although as to a judgment creditor this statute would invalidate an attempted transfer of legal title, an equitable interest in realty, such as is involved here, is not within the scope of A.R.S. § 33–401 or A.R.S. § 33–412. The latter section provides:

"A. All bargains, sales and other conveyances whatever of lands, tenements and hereditaments, whether made for passing an estate of freehold or inheritance or an estate for a term of years, and deeds of settlement upon marriage, whether of land, money or other personal property, and deeds of trust and mortgages of whatever kind, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, unless they are acknowledged and recorded in the office of the county recorder as required by law, or where record is not required, deposited and filed with the recorder.

"B. Such unrecorded instruments, as between the parties and their heirs, and as to all subsequent purchasers with notice thereof, or without valuable consideration, shall be valid and binding."

Although generally American courts construe recording laws as requiring and authorizing the recording of equitable as well as legal interests, 45 Am.Jur. Records and Recording Laws § 49 (1943), Arizona appears to have confined the operation of A.R.S. § 33–412 to legal interests in land. Luke v. Smith, 13 Ariz. 155, 108 P. 494 (1910); Jarvis v. Chanslor & Lyon Co., 20 Ariz. 134, 177 P. 27 (1919). In Jarvis, A agreed to sell real property to B. A put his deed in escrow and before the close of escrow, while the title to this property was still in A, B executed a deed conveying his equity in the property to C, which deed was also put in escrow. After this delivery, but before recordation of either deed, D, a creditor of B, attached the property and after attachment both deeds were re-

**44**

corded. In reversing the Superior Court's judgment refusing to enjoin sale by the attaching creditor, the Supreme Court said:

> "We have no statute that requires the escrow deed [from A to B] to be placed of record before its second delivery. Paragraph 2080, Civil Code of 1913 [A. R.S. § 33–412] does not cover the case. Nor would the recordation or the lack of it affect the right of the grantee therein to transfer his equitable interest, or make his interest less or more amenable to attachment by his creditors."  20 Ariz. at 136–137, 177 P. at 28.

The question whether A.R.S. § 33–412 requires recordation of equitable as well as legal interests has also been discussed by at least one legal scholar, W. Rehnquist, Subdivision Trusts and the Bankruptcy Act, 3 Ariz.L.Rev. 165 at 171–172 (1961):

> "The holding [in Jarvis, supra] is consistent with at least one reasonable reading of the language of the Recording Act, which language suggests that its terms are confined to *traditional legal estates* in land:
>
> " 'All bargains, sales and other conveyances whatever of *land, tenements, and hereditaments, whether made for passing an estate of freehold or inheritance or an estate for a term of years* * * * shall be void as to creditors and subsequent purchasers for valuable consideration without notice, unless they are acknowledged and recorded in the office of the county recorder as required by law * * *. Ariz.Rev.Stat. Ann. § 33–412 (1956) * * *' " (emphasis in original) 3 Ariz.L.Rev. 165 at 172.

Under the Arizona cases construing A.R.S. §§ 33–401 and 33–412, we cannot therefore say that failure to record the children's interest in the residential real property made such interest unenforceable as to the appellant/judgment creditor.

STEVENS, and CAMERON, JJ., concur.