489 P.2d 1225

The WHEEL OF LIFE FOUNDATION, INC., an Arizona corporation, et al., Appellants,

v.

Hal A. LADWIG, a single man, Appellee.

No. I CA–CIV 1472.

Court of Appeals of Arizona,
Division 1,
Department A.

Nov. 1, 1971.
Rehearing Denied Dec. 2, 1971.
Review Denied Jan. 4, 1972.

Locklear & Wolfinger by H. J. Wolfinger, Prescott, for appellants.

A. L. Favour by James Hancock, Prescott, for appellee.

CASE, Judge.

This is an appeal by appellants (defendants in the trial court) from an amended judgment in favor of appellee (plaintiff in the trial court).

The matter was tried to the court and findings of fact and conclusions of law were neither requested nor made. Accordingly, we must view the evidence in a light most favorable to upholding the judgment and will affirm it if we find the trial court's judgment supported by reasonable evidence.

The facts necessary for a determination of this matter are as follows. Mr. Hal Ladwig moved from California to Yarnell, Arizona in January of 1967. He soon was introduced to Mr. Ted Pierce. Pierce and Ladwig shared the desire to establish a spiritual or healing community and began investigating the possibility of purchasing various parcels of land for the development. Pierce and Ladwig negotiated with Mr. Joe Bailey and in early April, 1967, decided to purchase 160 acres of land near Yarnell.

At the inception of their relationship, Pierce informed Ladwig that he (Pierce) had previously (in April, 1966) formed an Arizona non-profit corporation known as the Wheel of Life Foundation, Inc. as vehicle for the development of a spiritual or healing center. At the time of incorporation, Pierce, his then wife, Ardath, and W. E. McQueen were the officers and only members of the corporation. Ladwig was appointed Secretary-Treasurer of the corporation in late February, 1967, at which time Ted Pierce was President and Bob Williams was Vice President.

The purchase price for the 160 acres was $30,878.00, payable by $3,000.00 down, and $200.00 per month from May, 1966 through October, 1966, and $210.00 per month thereafter, with interest from October,

1967. The escrow instructions denominate the Wheel of Life Foundation, Inc., a corporation, as buyer and are signed by Ted Pierce and Hal Ladwig with no designation of corporate office. The agreement of sale also listed the Wheel of Life Foundation, Inc. as buyer but was signed by Pierce as President and Ladwig as Secretary.

Ladwig, from his personal account, made the $3,000.00 down payment by check directly to Joe Bailey. He also made the $200.00 May, 1967 land payment to Joe Bailey. He made further land payments out of his personal funds for February, March, April, May, June and July of 1968. Five of these payments were made to the corporation which issued its check to Joe Bailey and one of the payments was made directly to Joe Bailey.

In April, 1966, Ladwig moved onto the land, living in his trailer and he and Pierce commenced the construction of a building which they agreed would eventually be Ladwig's home and which was to be used for healing work until further facilities were constructed.

In June, 1967, John and Edna Harland, Virgil and Mildred Miller, Belva Green and Oleta Pierce were added to the board of directors. These persons, other than the new Mrs. Pierce, resided in California and visited the Arizona property on the weekends.

In September, 1967, construction of the first building was completed. The board of directors, now controlled by the California group, wanted the building used as an administration building and forbade Pierce to occupy it as his dwelling. Pierce and Ladwig, disregarding the board's wishes, agreed that Pierce should live in the building until his own home on the 160 acres was constructed. Construction on Pierce's home was begun in October or November, 1967 and completed in March, 1968, at which time Ladwig moved into the first building constructed and Pierce occupied his home.

In October, 1967, the construction of an apartment building, with four units, was begun but never completed. Ladwig advanced $3,000.00 cash to the corporation to aid in construction with an understanding on his part that the money would be considered a loan.

In 1968, the Halls moved their trailer onto the 160 acres and built a trailer cover, living room, bath and patio. Ira Hall testified that he invested $12,000.00 in the improvements.

The evidence further indicated that Ladwig expended a total of approximately $21,000.00 in land payments and for the purchase of materials used in the various construction projects.

The dispute which resulted in this litigation occurred after the California group gained control of the board of directors and Pierce initiated a policy of requiring the occupants of the land to sign lot leases. Ladwig refused to sign the lease. Further adding confusion to the situation, the other members disliked the disorganized manner in which Ladwig maintained his premises. In this regard, after Ladwig disassociated himself from the venture in 1968, the board adopted by-laws and amended their articles of incorporation to define the requisites of membership and to establish a procedure to oust a party from the 160 acres. Ladwig then filed the instant action seeking recovery of the funds expended or such other relief as the court deemed just and equitable. More specifically, the complaint was divided into three sections. The first section alleges that defendants are indebted to plaintiff in the sum of $21,538.18, on account of moneys, at the request of defendants, paid, laid out, expended and advanced for defendants by plaintiff. The second section alleges a joint venture between Pierce and Ladwig and the repudiation thereof by defendants entitling plaintiff to damages. The third ground of recovery alleges a joint venture between plaintiff and defendants and the repudiation thereof by defendants which resulted in the creation of a constructive trust in

favor of plaintiff. Defendants answered each allegation and counterclaimed to evict Ladwig from the property.

After a trial to the court and the submission of memoranda, the trial court found Hal Ladwig and Ted and Oleta Pierce to be joint owners of the property, together with the improvements thereon, subject to the legal and equitable rights of the remaining named defendants for money, materials and labor furnished by them in the purchase and development of the real property and the improvements, the amount of which was to be determined at a subsequent hearing. The court further ordered the corporation to execute the necessary documents to transfer title to the property. The court found for plaintiff on defendants' counterclaim.

■ The first question presented on appeal is whether the trial court erred in varying or exceeding its pretrial order. We find no error herein though the case was characterized in the pretrial order as "a civil breach of contract." The order further indicated the issues to be tried are those set forth in the pleadings and in the position statements made in the pretrial order. The trial followed the issues set forth in the pleadings and counsel's pretrial position statements notwithstanding the court's characterization of the case and no error resulted.

Appellant next questions whether Ladwig was entitled to an interest in the 160 acres. In determining this question, since no findings of fact or conclusions of law were requested or made, on appeal this court will affirm if we find any substantial evidence to support the trial court's determination. Odom v. First National Bank Of Arizona, 85 Ariz. 238, 336 P.2d 141 (1959).

■■ After reviewing the evidence, we have concluded that the trial court's judgment is supported by the evidence. The judgment does not indicate the particular theory upon which the result is based but in our opinion it is hinged on a theory of purchase money resulting trust. Though this particular theory of recovery was not specifically plead, Rule 54(d) of the Arizona Rules of Civil Procedure, 16 A.R.S., entitles the trial court to grant the relief to which the party is entitled. Mountain States Construction Company v. Riley, 88 Ariz. 335, 356 P.2d 648 (1960).

Our appellate courts have often approvingly cited the Restatement of the Law of Trusts, §§ 404 and 440. Gabitzsch v. Cole 95 Ariz. 15, 386 P.2d 23 (1963); Collins v. Collins, 46 Ariz. 485, 52 P.2d 1169 (1935); Valley National Bank v. Hay, 13 Ariz.App. 39, 474 P.2d 46, supplemented by, 13 Ariz. App. 180, 475 P.2d 9 (1970). These sections provide as follows:

"§ 404. Where Resulting Trust Arises

A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of.

§ 440. General Rule

Where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid, except as stated in §§ 441, 442 and 444." Restatement (Second) of Trusts, §§ 404, 440 (1959).

Section 442 which discusses purchases in the name of relatives and Section 444 which discusses transfers in order to accomplish an illegal purpose are not relevant herein. Section 441, set out below, is relevant.

"§ 441. Rebutting the Resulting Trust

A resulting trust does not arise where a transfer of property is made to one person and the purchase price is paid by another, if the person by whom the purchase price is paid manifests an inten-

tion that no resulting trust should arise." Restatement (Second) of Trusts § 441 (1959).

Two examples given in Comment (a) to Section 441 are where the payor intended to make a gift of the property to the transferee and where he intended to make a loan of the purchase price to the transferee.

The testimony in this regard is at best contradictory. The defendants assert that Ladwig's advancements were gifts to a charitable corporation made voluntarily with full knowledge of the corporation's existence. Some of Ladwig's payments made to the corporation were denominated on the corporate records as land payments, while similar advancements made by the Pierce's were denominated as loans to the corporation. Moreover, Pierce testified that receipts were normally given for contributions though no receipts were ever given to Ladwig. Ira Hall testified he made no contributions to the corporation though he invested $12,000.00 in improving his trailer. Further testimony indicated that there were no funds in the corporate account until Ladwig started supplying money.

Viewing the entire record, we find sufficient credible evidence that Ladwig's advances were not intended to be gifts, notwithstanding the fact that the Foundation was a charitable corporation. There is minimal evidence that any of Ladwig's land payments were loans, thus negating this alternative.

The evidence regarding the Pierce's advancements also negates any intended gift but gives some credence to the loan theory. Since this aspect of the judgment is not questioned, we will not discuss it.

It is clear from the record that Ladwig has carried his burden by establishing by clear and convincing evidence that he paid a portion of the purchase price for the land and the improvements thereon and

that a purchase money resulting trust arose.

Affirmed.

STEVENS, P. J., and DONOFRIO, J., concur.