858 P.2d 683

**Victor BLALAK, Plaintiff–Appellant,**

v.

**MID VALLEY TRANSPORTATION, INC., Defendant–Appellee.**

**No. 1 CA–CV 91–0169.**

Court of Appeals of Arizona, Division One, Department B.

Aug. 26, 1993.

Barton L. Baker, Yuma, for plaintiff-appellant.

Molloy, Jones & Donahue, P.C. by David K. Gray, Tucson, for defendant-appellee.

## OPINION

JACOBSON, Judge.

The issue presented by this appeal is whether the failure to record the existence of a beneficial interest in land held in trust, as provided by A.R.S. § 33–404, subjects that beneficial interest to a judgment lien obtained against the trustee.

## FACTS AND PROCEDURAL HISTORY

The facts are not in material dispute. In 1982, appellant Victor Blalak sold property in Yuma County for the sum of $50,000. Sometime later, in 1988, Blalak learned that the same property was listed for sale by his purchasers for the sum of $29,900.

In order to conceal his involvement in reacquiring the property, Blalak had his real estate agent make an offer of $28,000 for the property in the name of Blalak's friend, Curt Willsie. The oral agreement between Willsie and Blalak provided that Willsie would take the property in his name and, after close of escrow, quitclaim it to Blalak.

The former purchasers accepted the $28,-000 offer, and escrow closed on December 16, 1988. Willsie executed a quitclaim deed to Blalak on that date, before a notary public, leaving the effective date and the acknowledgement date blank. Blalak waited eleven months before recording the deed.

Subsequently, Blalak attempted to use the property as collateral for a loan. A title search revealed that appellee Mid Valley Transportation, Inc. had acquired a judgment lien on the property as the result of a recorded judgment obtained against Willsie in California. Willsie was unaware that the judgment had been recorded in Arizona.

Blalak brought this action seeking to quiet title to the property and declaring the judgment lien to be invalid. On cross-motions for summary judgment, the trial court denied Blalak's motion and granted the motion of Mid Valley. Blalak timely appealed.

## DISCUSSION

The positions of the parties are relatively straightforward. Blalak contends that Willsie held the property in trust for him, and that, therefore, Willsie's creditors could not affect Blalak's beneficial interest. Mid Valley contends that Blalak's failure to disclose his interest subjects that interest to its judgment lien by reason of A.R.S. § 33–412(A), which provides that all con-

veyances of property are void as to creditors unless recorded, and A.R.S. § 33–404, which requires the disclosure of the names and addresses of beneficiaries of property held in trust.

In making his argument, Blalak relies primarily upon *Valley National Bank v. Hay*, 13 Ariz.App. 39, 474 P.2d 46 (1970), which held that the beneficial interest arising from a resulting trust in favor of the trustee's children was not subject to a judgment lien in favor of the trustee's creditor, even though that beneficial interest was not recorded. In attempting to apply *Hay*, Blalak characterizes his interest in the property as arising from a resulting trust because he supplied the purchase price while the property was taken in the name of another. Mid Valley disputes this characterization because Blalak had an express, although unwritten, agreement with Willsie and, therefore, the property was held in an express trust that had to be disclosed under A.R.S. § 33–404.

In our opinion, it is irrelevant whether the trust was an express trust or a resulting trust, except for the applicability of *Hay*. The fact that a trust existed on this property is acknowledged by both Mid Valley and Blalak. However, the world was not placed on notice that a trust relationship existed between Blalak and Willsie, whether that trust arose from an express trust or a resulting trust. The issue in this case focuses on the enforceability of a judgment lien against trust property where the existence of the trust or the beneficiary has not been disclosed to the world.

We start, as does Blalak, with this court's opinion in *Hay*. The original opinion in *Hay* clearly held that A.R.S. § 33–412(A) [1] was not intended to affect equitable interest in land, and was only intended to require that legal interests in land be recorded. However, the supplemental

---

1. A.R.S. § 33–412(A) provides:

   All bargains, sales and other conveyances whatever of lands, tenements and hereditaments, whether made for passing an estate of freehold or inheritance or an estate for a term of years, and deeds of settlement upon marriage, whether of land, money or other personal property, and deeds of trust and mort-

   gages of whatever kind, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, unless they are acknowledged and recorded in the office of the county recorder as required by law, or where record is not required, deposited and filed with the recorder.

opinion of the court held "only that a resulting trust, in order to be enforceable against a creditor, need not be recorded under the provisions of A.R.S. § 33–412." 13 Ariz.App. 180, 181, 475 P.2d 9, 10 (1970). Thus, *Hay*, by its express holding, is limited to resulting trusts.

This does not mean that the original position in *Hay* was incorrect; it simply means that the *Hay* court did not need to go beyond the issue directly before it in deciding that case. Because we have concluded that it is irrelevant whether the trust created between Blalak and Willsie was the result of an express trust or a resulting trust, we need to determine whether the position taken by *Hay* initially, that is, that the recording requirements of A.R.S. § 33–412 do not apply to the recording of equitable interests in land, is correct.

■ A creditor is entitled to execute only on the interest its debtor holds in property. Thus, property held by a debtor in trust is not subject to attachment for the debtor's debts. *Richion v. Mahoney*, 62 Cal.App.3d 604, 133 Cal.Rptr. 262 (1976). This is the rule in absence of a recording statute requiring a different result. 90 C.J.S. *Trust* § 185 (1955). In Arizona at least since 1910, the recording statutes have not required that an equitable interest in land be recorded to be valid against creditors or third party bona fide purchasers.

■ As was held in *Luke v. Smith*, 13 Ariz. 155, 108 P. 494 (1910), *aff'd*, 227 U.S. 379, 33 S.Ct. 356, 57 L.Ed. 558 (1913), the recording statutes making all conveyances of land void as to creditors and subsequent purchasers for value, unless acknowledged and recorded, do not cover equitable liens, which need not be recorded to prevail over judgment creditors of the actual titleholder. *See also Jarvis v. Chanslor & Lyon Co.*, 20 Ariz. 134, 177 P. 27 (1919). This is also the conclusion of at least one commentator on the subject, who noted: *"Jarvis* stands for the proposition that in Arizona a transfer of the Buyer's equitable interest under an agreement of sale is not subject to the Recording Act." W. Rehnquist, *Subdivision Trusts and the Bankruptcy Act*, 3 Ariz.L.Rev. 165, 172 (1961).

Further, this is also the position of the Texas courts, the state from which our recording statute was taken. In *Johnson v. Darr*, 114 Tex. 516, 272 S.W. 1098 (1925), a fraternal organization purchased property in the name of one of its members under an express trust that required the member to hold the property in trust and to convey to the organization upon demand. Creditors of the member attached the property and obtained judgments of foreclosure of their lien. The organization brought suit to remove the lien and establish the trust. The issue before the Texas Supreme Court was whether the equitable interest of the organization had to be recorded in order to avoid the operation of the Texas recording statute, which provided in part: "... [all] conveyances ... of any land ... shall be void as to all creditors and subsequent purchasers for valuable consideration without notice, unless they shall be acknowledged or proved and filed with the clerk, to be recorded as required by law." In holding that the organization's interest in the property need not be recorded, the court observed:

> The equitable title of the [organization] was the superior title. It existed independent of the written instrument executed by [the member], and could have been enforced in a court of equity, had the instrument never been executed. That being true, regardless of the registration statute, the title of the [organization] was superior to the lien of the attaching creditors, and was not within or affected by [the recording statute].

*Johnson*, 272 S.W. at 1100.

■ We therefore hold, as did *Hay*, that A.R.S. § 33–412(A) does not, standing alone, affect the validity of unrecorded equitable liens as against creditors or purchasers for value without notice of the liens.

Mid Valley argues that the holding in *Hay* is no longer valid because, subsequent to that holding, the legislature enacted A.R.S. § 33–404, which provides:

> A. Notwithstanding § 33–411, subsection C, every deed or conveyance of

real property, or an interest in real property, located in this state which is executed after June 22, 1976 in which the grantee is described as a trustee or acts as a trustee shall disclose the names and addresses of the beneficiaries for whom the grantee holds title and shall identify the trust or other agreement under which the grantee is acting or refer by proper description to the document number or the docket and page of an instrument or other writing which is of public record in the county in which the property so conveyed is located in which such matters are disclosed.

Added by Laws 1987, ch. 153, § 2.

■ In our opinion, A.R.S. § 33–404, which now requires the disclosure of beneficial interests in land, does not change the result initially reached in *Hay.* We reach this conclusion for two reasons: (1) the statute provides the exclusive remedy for its breach, and (2) it does not purport to affect any other interests in the property.

A.R.S. § 33–404(E) provides that, in the event disclosure of beneficial interests is not made in conformity with the statute, the conveyance "is voidable by the other party to the conveyance," but that such an action must be "commenced within two years after the date of recordation of the document effecting the conveyance." Obviously, the prophylactic effects of A.R.S. § 33–404, even as between the grantor and grantee, are extinguished after two years. Thus, after two years, a judgment creditor of the trustee would be subject to the general rule that it can acquire only what interest its judgment debtor held in the property.

That the remedy of avoidance by the grantor is the exclusive one afforded by A.R.S. § 33–404 is made crystal clear by subsection (F), which provides:

If ... any interest in real property ... is acquired for value, the ... interest ... is not impaired or in any way adversely affected by reason of the failure of any person to comply with the requirements of this section.

By its express terms, subsection (F) excludes any adverse effect that might be suffered by third-party interests in the property acquired for value. Thus, Blalak's equitable interest in the property could not be affected by his failure to comply with A.R.S. § 33–404.

■ In this regard, however, Mid Valley argues that the equitable title held by Blalak under trust was not "acquired for value." We disagree. The sole basis upon which Blalak acquired a beneficial interest in this property was the result of his paying the entire purchase price for the property. That interest was "acquired for value."

■ Mid Valley also argues that Blalak's interest was not an "interest in real property" based on the contention that the transaction between Willsie and Blalak was similar to a subdivision trust and that a beneficial interest under such subdivision trusts is considered to be a personal property interest only. The problem with this analysis is that this was not a subdivision trust; rather, it was a trust resulting from one party supplying the purchase price, but title to the property being taken in another. This is exactly the same situation that was present in *Hay,* where the Hay children supplied a portion of the purchase price, but title was taken in the name of Mrs. Hay alone.

Finally, Mid Valley argues that to not give its judgment lien preference is to emasculate A.R.S. § 33–404. The short answer is that the legislature determines how deep its remedy is to cut. The remedy the legislature fashioned to correct what it perceived to be an evil was to allow the non-offending party to withdraw from the transaction. Nothing less, but nothing more, was provided.

In summary, neither A.R.S. § 33–412 nor the failure to comply with A.R.S. § 33–404 allows Mid Valley to apply its judgment lien against Blalak's beneficial interest in the property. The judgment is reversed

and the matter remanded with directions to enter judgment quieting title in Blalak.

EHRLICH, P.J., concurs.

GARBARINO, Judge, dissenting.

I respectfully disagree with my colleagues. Hard cases make for bad law. It's distasteful when the law creates a windfall as it appears to do in this case. However, when A.R.S. section 33–404 was enacted, the legislature intended to void as to all creditors and subsequent purchasers an unrecorded beneficial interest in real property. A.R.S. section 33–404(A) specifically provides that every deed in which the grantee holds title as a trustee shall disclose the names of the beneficiaries. A.R.S. section 33–412, which has been the law for many years, provides that all conveyances of property are void as to creditors unless recorded. When read together, it seems clear that the legislative intent was to prevent parties to a conveyance from engaging in deceit by the use of "silence" which is exactly what Willsie and Blalak were doing in this case.

A.R.S. section 33–411(A) bolsters this position by providing that no instrument affecting real property is valid against a subsequent purchaser for valuable consideration without notice unless recorded as provided by law. Certainly a recorded lien in existence at the time of the conveyance and known to Willsie should not receive a lesser status than a lien recorded subsequent to the conveyance. The situation would have been no different had Mid Valley been a subsequent lienholder.

The majority relies on *Valley National Bank v. Hay*, 13 Ariz.App. 39, 474 P.2d 46 (1970), which was decided before A.R.S. section 33–404 was enacted. *Hay* was a difficult case which involved the failure of a judgment debtor to record her minor children's interest in real property purchased in her name with their funds. Because the interest not recorded was an "equitable" interest, the court held that the failure to record did not render such interest unenforceable as to a judgment creditor. In doing so, the court relied heavily upon the fact that Arizona confined the operation of A.R.S. section 33–412 to legal interests in land. In 1987, the Arizona legislature passed A.R.S. section 33–404 which mandated the recording of equitable interests in real property, effective August 18, 1987, for all interests executed after June 22, 1976.

The majority directs us to A.R.S. section 33–404(E) which they believe provides the exclusive remedy for a breach of A.R.S. section 33–404(A). Again I disagree. Section 33–404(E) merely provides a remedy against the grantee should, for any reason, it become desirable to the grantor to void the transaction. It could well be the situation that the grantor, the grantee, and the undisclosed beneficiary wish to conceal the transaction. A.R.S. section 33–404 would then be without application and there would never, under those circumstances, be a necessity to record the names of the beneficiaries as required by section 33–404(A). I cannot believe this to be the legislative intent.

A.R.S. section 33–404(F) is of no help to the majority's position. It merely provides that a subsequent interest acquired for value is unaffected by the failure of any of the original parties to comply with the statute. The interest that section 33–404(F) seeks to protect is an interest acquired by an innocent party from the grantee referred to in section 33–404(A) who is acting as a trustee but who has failed to comply with the disclosure provisions of that statute. Section 33–404(F) does not provide protection to an undisclosed party to the original transaction. If anything, A.R.S. section 33–404(F) provides protection to Mid Valley.

The legislative intent appears crystal clear to me. If you allow another to hold title to real property for you without disclosing the relationship as required by A.R.S. section 33–404, you do so at your peril. The law does not condone secretive arrangements used to deceive others. The Arizona legislature certainly has the power to determine the effect and priorities of land conveyances within the borders of this state. They have determined that it is in

the best interests of the citizens of this state, where real property is concerned, for trustees holding title to disclose the names and addresses of the beneficiaries. The recording statutes are intended to be a means of preventing wrongdoers from depriving innocent purchasers, creditors and lienholders of their interests in real property and to give parties a higher level of transactional awareness. It is in this light I believe we should interpret section 33–404.