[No. 30567.   Department Two.   October 8, 1948.]

AMERICAN BONDING COMPANY OF BALTIMORE, *Appellant*, v. CLYDE A. DOWELL *et al., Respondents.*[1]

[1]Reported in 198 P. (2d) ·191.

*Jerome Williams*, for appellant.

*Tustin, Chandler & Tustin*, for respondent Nugent.

JEFFERS, J.—This action was instituted by American Bonding Company of Baltimore, as assignee of Fidelity Savings & Loan Association (hereinafter referred to as Fidelity), against Clyde A. Dowell and wife and Louise J. Nugent, for the purpose of recovering judgment against defendants in the amount of $3,589.14, being the amount of a check drawn by MacGillivray & Co., on Washington Trust Company in favor of Fidelity, such check representing the balance due the grantors of a certain deed held in escrow by Fidelity, and which check, when presented for payment to Washington Trust Company, was refused on the ground of insufficient funds and has never been paid. Plaintiff, in its complaint, also asked that a lien in favor of plaintiff be declared upon the property described in the deed held under the escrow agreement by Fidelity.

A recitation of some of the facts will be necessary to further explain the situation presented by the pleadings in this case. Many of the facts are not in dispute, and the facts hereinafter stated are either undisputed or sustained by substantial evidence.

Fidelity is and was duly organized and existing as a savings and loan association under the laws of the state of Washington, maintaining its principal place of business at Spokane, Washington. On September 13, 1945, Fidelity entered into a contract with William T. Carter and wife and the defendants Dowell, whereby it agreed to hold in escrow

a warranty deed from Carter and wife as vendors, to defendants Dowell as purchasers, conveying the north half of the east half of tract 305, except the north one and one-half acres thereof, of Opportunity, in the county of Spokane, state of Washington, and to deliver such deed to the purchasers upon receipt of the sum of thirty-seven hundred dollars, payable in monthly installments of twenty-five dollars or more on the first of each and every month. The escrow agreement further provided that, in the event of failure to pay any sums within the period stated for such payment, the escrow holder was authorized to return all documents to the vendors.

D. J. MacGillivray, Jr., was a licensed real-estate broker, doing business in Spokane under the name of MacGillivray & Co. This company maintained a branch office at Dishman, Washington, where defendant Mrs. Nugent went to inquire about purchasing a small house she had seen with the MacGillivray & Co. sale sign on it. About April 1, 1947, defendant Clyde Dowell overheard F. E. Hilton, a salesman for MacGillivray & Co., state that a lady was looking for a small place, and that she wanted to pay around fifty-five hundred dollars for it. Dowell, in a joking manner, told the salesman that he would sell her his place, telling the salesman where it was located. This was the property which the Dowells were buying from the Carters on contract, the deed to which was being held in escrow by Fidelity.

Mr. Hilton took Mrs. Nugent to look at the property, pricing it to her at fifty-five hundred dollars. Only Mrs. Dowell was at home at the time the salesman and Mrs. Nugent visited the property, and Mrs. Dowell informed them that they, the Dowells, were purchasing the property under contract from the Carters, and that Mrs. Nugent could assume the balance on the contract. Mrs. Nugent stated that she wanted to pay cash and save the interest.

On April 2, 1947, Mrs. Nugent decided to purchase the Dowell property and signed an agreement to purchase, which was introduced herein as plaintiff's exhibit No. 5, whereby she agreed to purchase the Dowell property for

fifty-five hundred dollars, payable two hundred cash, which she then paid to Mr. Hilton, and the balance of the fifty-five hundred dollars on proof of title by title report. On the evening of April 2nd, Mr. Hilton went to the Dowells' home and obtained their signatures on the agreement to purchase, whereby the Dowells agreed to sell the property to Mrs. Nugent on the terms set out in the agreement. After the Dowells had signed the agreement, the salesman, Mr. Hilton, had them sign a "uniform listing contract" (plaintiff's exhibit No. 4), whereby MacGillivray & Co. was appointed the agent of the Dowells to sell the property.

On April 12th, the salesman informed Mrs. Nugent that the title report had been returned, and that she should be at MacGillivray & Co.'s downtown office the following Monday prepared to pay the balance of the purchase price; that Mr. and Mrs. Dowell would be there to sign the deed. Mrs. Nugent went to the main office on Monday, where she was shown the title report, introduced herein as defendants' exhibit No. 11. This report did not show the Dowells' interest, but showed the Carters as the record owners of the property. Mrs. Nugent testified that Mr. MacGillivray on this date, April 14, 1947, also showed her a warranty deed signed by Mr. and Mrs. Dowell. However, there is a conflict in the testimony here, and the warranty deed conveying title from the Dowells to Mrs. Nugent does not appear to have been signed until April 18, 1947.

On April 14, 1947, Mrs. Nugent paid MacGillivray the balance of the purchase price, fifty-three hundred dollars cash, for which he gave her a receipt, introduced herein as plaintiff's exhibit No. 9. At this time, according to Mrs. Nugent, MacGillivray told her he would pay the balance due on the Carter deed held in escrow by Fidelity; that he would have the deeds from the Carters to the Dowells and from the Dowells to her recorded; and that he would provide her with an insured title brought down in her name.

The evidence shows that, after deducting its commission of $275, the expenses for the title report and other items chargeable to the seller, MacGillivray & Co., on May 6, 1947, paid the Dowells the final payment owing them from

the sale to Mrs. Nugent. MacGillivray, however, had not at this time procured the escrowed deed from the Carters to the Dowells, as he had informed Mrs. Nugent he would, and Mrs. Nugent, becoming concerned about the deal, on May 17, 1947, went to the office of MacGillivray & Co. and demanded the deeds or the return of her money. At this time, MacGillivray promised her he would procure the escrowed Carter deed from Fidelity on the following Monday, May 19th. On the date last mentioned, a representative of Mac-Gillivray & Co. presented to Fidelity a check drawn on the Washington Trust Company by MacGillivray & Co. Trust Account, in favor of Fidelity, in the sum of $3,589.14, this amount being the balance of the unpaid purchase price, with interest, due under the contract between the Carters and the Dowells.

C. S. Piper, head of the escrow department of Fidelity, stated that when the MacGillivray check was presented, Fidelity did not know who MacGillivray & Co. was representing, and that they accepted the check and delivered the escrowed papers exclusively on the faith of MacGillivray & Co. Before delivering the papers, Mr. Piper made inquiry by telephone of the Washington Trust Company as to whether or not the check was good. In response to this inquiry, the Washington Trust Company said that the check was good *then*. Upon receiving this information, Mr. Piper delivered the deed and papers to MacGillivray's representative, deposited the money in the account which Carter had with Fidelity, and mailed a notice to the Carters that the contract had been paid in full. This money the Carters withdrew within a few days and prior to the time the MacGillivray check was refused on account of insufficient funds. The deeds from the Carters to the Dowells and from the Dowells to Mrs. Nugent were both recorded in the office of the auditor of Spokane county by MacGillivray on May 19, 1947, and the title to the real estate was thereby vested of record in Mrs. Nugent.

The record further shows that on May 19th at the beginning of the day there was $27,000 on deposit in the Washington Trust Company to the credit of MacGillivray

& Co. Trust Account. When Fidelity called to verify the check, the balance was $34,000, and at the end of the day it was $34,124.54. Fidelity is two blocks from the Washington Trust Company. Fidelity deposited the MacGillivray & Co. check the next morning, May 20, 1947, with the Old National Bank of Spokane for clearing. The check was sent through the clearing house and was presented to the Washington Trust Company for payment on May 21, 1947, at which time payment of other checks by MacGillivray & Co. had reduced the balance of its trust account to $816.87. Payment of the check in question was refused by the Washington Trust Company, and the check was returned to Fidelity with a slip marked insufficient funds.

The testimony shows that D. J. MacGillivray, Jr., was and had been for many months in a precarious financial condition. In the latter part of 1946, the Spokane & Eastern branch of Seattle-First National Bank in Spokane, where MacGillivray then carried his bank deposits under the name of MacGillivray & Co., declined to have further banking relations with him and compelled him to close his account, because he would deposit large out-of-town checks and immediately draw on them and had issued checks in excess of funds. MacGillivray then transferred his account to the Washington Trust Company, where, although he carried his bank account under the name of MacGillivray & Co. Trust Account, he deposited therein money received from all sources in the conduct of his real-estate business, and drew checks against this account for the expenses of conducting his business, as well as for personal uses.

When the check in the instant case was returned to Fidelity, the latter called on D. J. MacGillivray, Jr., in an effort to have the check cleared, and it was then discovered that MacGillivray was in a hopeless financial condition and could not make the check good. On May 31, 1947, Walter B. Heitfeld was appointed receiver of the estate of D. J. MacGillivray, Jr., and later trustee in bankruptcy.

Plaintiff, American Bonding Company, under its contract of insurance with Fidelity, on June 20, 1947, paid to Fidelity the sum of $3,589.14, the amount of the MacGil-

livray check, and received from Fidelity the assignment of all its claims on account of the loss. Under this assignment, plaintiff brought this action against the defendants.

The complaint alleged in substance a total failure of consideration for the delivery of the deed and other papers held by it under the escrow contract, and that the delivery was and is void and of no effect. It also alleged that MacGillivray, in making the contract between the defendants, and in all subsequent dealings having to do with the contract, was acting as the agent of both parties, and, as stated, plaintiff asked to recover the sum of $3,589.14 and to impress the real estate involved in that amount.

By her answer, Mrs. Nugent, who is in reality the main defendant in this action, admitted that MacGillivray was the agent of the Dowells, but denied that he was acting as her agent. She alleged affirmatively that, under the custom of the Spokane area and under the facts in the instant case, MacGillivray was at all times acting as the agent of the sellers, the Dowells, and not as her agent; that Fidelity accepted the check as money; that Fidelity knew MacGillivray's only right to make payment was as agent for the Dowells, who were the buyers under the escrow, yet it, Fidelity, elected to deal with MacGillivray personally, on his own credit, rather than with his principal; that Fidelity negligently delayed presenting this check for payment; and that this neglect caused the loss, which it may not cast upon Mrs. Nugent.

While the Dowells appeared in the lower court, they have filed no brief on this appeal. Their answer to plaintiff's complaint denied that MacGillivray was acting as their agent, and alleged affirmatively that MacGillivray acted under the instruction of Mrs. Nugent. They further alleged that, by reason of Fidelity's knowledge and delay, Fidelity became responsible for the loss.

The matter was heard by the court, which made and entered findings of fact, conclusions of law, and a judgment, by which the court dismissed plaintiff's action with prejudice and awarded to defendants judgment against plaintiff for their costs. This appeal by plaintiff followed.

Appellant bases error upon the entry by the trial court of findings of fact Nos. 5, 10, and 11; the making and entering of conclusions of law Nos. 1, 2, 3, 4, and 5; and the entering of judgment dismissing appellant's action with prejudice. Appellant states in its brief that all the assignments of error present the same general question, that is, that on the evidence and the law applicable thereto, appellant is entitled to the relief sought, and therefore that all of the assignments of error will be discussed together.

It should be kept in mind that neither the Dowells nor the Carters are here complaining. The Carters have received the money due them under the escrow agreement, which money was voluntarily paid by Fidelity. The Dowells accepted from MacGillivray all that they were claiming in this transaction.

We make the above statement primarily for the reason that, in our opinion, the status of appellant, as assignee of an escrow holder, is not the same as though it had some right, title, or interest in this property other than that of a mere escrow holder.

Appellant's entire argument in its brief is based upon the general contentions that MacGillivray was the agent of Mrs. Nugent in obtaining the Carter-Dowell deed from Fidelity and in handling the fifty-three hundred dollars turned over to MacGillivray by Mrs. Nugent; that MacGillivray had no authority to receive payment from Mrs. Nugent; that the only authority MacGillivray had from the Dowells was to find a purchaser for the property. Appellant concludes the first part of the argument in its brief with this statement:

"Appellant submits that under the law and the facts above discussed, MacGillivray was acting as the agent and trustee of the buyer, respondent Nugent, in this transaction in handling the $5,300.00, or at least $3,589.14 thereof, and in attempting to secure the Carter-Dowell deed out of escrow. This being true, respondent Nugent must be liable to appellant, as the assignee of Fidelity Savings & Loan Association; and appellant under general equitable principles is entitled to an equitable lien in the property which was procured for respondent Nugent by her agent through his

wrongful and fraudulent act in obtaining the property by the use of a bank check which proved to be worthless."

Appellant, on p. 40 of its brief, admits that if Mrs. Nugent was a bona fide purchaser of the property for value, she would take it free and clear of any claimed constructive trust or equity of Fidelity. However, appellant contends that she did not do this, as she knew that the legal title to the property was in Carter, and she did not part with her money in reliance upon any title in the Dowells, or in reliance upon anything other than her faith in MacGillivray.

The trial court found and concluded that MacGillivray & Co. was not the agent of Mrs. Nugent in any part of the transaction above referred to, and we are of the opinion there is ample evidence to support this finding, and that the law as applied to the facts in this case supports the judgment.

We have examined and are conversant with the rule announced in the authority cited by appellant to the effect that a principal is liable for loss sustained by third persons by reason of the wrongful acts of the agent while such agent is acting within the scope of his authority, but such authority is not controlling here, for the reason, as stated, that in our opinion MacGillivray was at no time acting as the agent of Mrs. Nugent.

We are also familiar with the general rule announced in the authority cited by appellant, to the effect that, under the ordinary powers given a real-estate broker by a seller, such agent is not authorized to enter into a contract of sale or accept the purchase money as agent of the seller. To sustain the rule last above announced, appellant cites, among other authority, 8 Am. Jur. 1014, § 56. However, this section contains the following exception:

"An exception to the foregoing rule prevails where the broker is clothed with the indicia of authority to receive payment, as where he is intrusted with possession of the goods to be sold or where the principal is not disclosed. Of course, if a broker is expressly authorized to receive the purchase money in behalf of his principal, payment to him is a complete discharge."

There is no question in this case but that the Dowells expressly authorized MacGillivray & Co. to sell this property to Mrs. Nugent, and paid a commission to MacGillivray for making such sale. (Uniform listing contract, plaintiff's exhibit No. 4.) There is no question but that the Dowells approved the agreement to purchase signed by Mrs. Nugent, which agreement stated that two hundred dollars had been paid as earnest money and the further sum of fifty-three hundred dollars *"to be paid in cash when papers are brought up ready when signed bal. to be paid."*

There is no question but that the Dowells knew that, in order to complete the deal, the Carter-Dowell deed would have to be obtained by paying to Carter the balance due thereon, and that a deed would then have to be executed by the Dowells to Mrs. Nugent.

Mrs. Nugent testified to the effect that Mrs. Dowell told her to have her dealings with MacGillivray, and that Mac-Gillivray was to pay off the amount owing to Carter. It is contended that the community is not bound by this statement of Mrs. Dowell, but the whole transaction was carried through in the manner indicated by Mrs. Dowell. Mr. and Mrs. Dowell signed the deed to Mrs. Nugent and left it in MacGillivray's office. Mr. Dowell stated:

"A. I signed the deed and they told me as soon as they got the papers out of escrow they would settle up with me, because they didn't know the exact amount it was going to cost them to get the papers out of escrow. Q. They were to pay off what you owed to the bank? A. Yes."

MacGillivray was the Dowells' agent, and we are satisfied that he was acting as their agent in accepting the purchase price from Mrs. Nugent and in doing all the things necessary to close the deal. All that Mrs. Nugent did was to pay the purchase price to MacGillivray, as she was instructed to do.

If there was any question as to the authority given MacGillivray by the Dowells, or either of them, the acts of MacGillivray were certainly ratified by the Dowells when, as shown by the statement rendered by MacGillivray to the Dowells on May 6, 1947 (plaintiff's exhibit No. 8), they

accepted the balance due them after MacGillivray had deducted from the total sum of fifty-five hundred dollars received from Mrs. Nugent the down payment, title expense, revenue stamps, his commission, a payment of one thousand dollars authorized by the Dowells, and other items.

Respondent also proved a custom which had existed and been followed by real-estate brokers in Spokane and vicinity for years, to the effect that when a broker accepts a listing from a seller the deal is closed through the broker's office, and in doing this the broker attends to getting any deed, either from escrow or elsewhere, which may be necessary to complete the seller's title, and collects the purchase price from the buyer.

Mrs. Nugent testified that she had bought and sold property and knew of this custom and, in making her payments to MacGillivray, relied upon this custom as well as her instructions from Mrs. Dowell.

In *Ankeny v. Young Bros.*, 52 Wash. 235, 243, 100 Pac. 736, this court quoted with approval the following statement from 19 Cyc. 199:

" 'In the absence of a special contract, the authority and duty of a broker depends upon the course of dealing in the particular community. A customer in giving authority to a broker to negotiate a transaction in a certain market is presumed, in the absence of evidence to the contrary, to have authorized the broker to transact the business in question in accordance with the rules, customs, and usages prevailing in that exchange.' "

We are also of the opinion that, under the facts in this case, Mrs. Nugent was an innocent purchaser for value. It is contended by appellant that she was not such an innocent purchaser because she paid the fifty-three hundred dollars to MacGillivray before he had possession of the Carter deed, and her money was embezzled by MacGillivray before he obtained the deed from escrow.

We quote from Restatement of the Law—Restitution.

Section 172, Bona Fide Purchase:

"(1) Where a person acquires title to property under such circumstances that otherwise he would hold it upon a

constructive trust or subject to an equitable lien, he does not so hold it if he gives value for the property without notice of such circumstances.

"(2) In the Restatement of this Subject such a transferee is called a bona fide purchaser."

Section 173, Value, comment c:

"*Payment of value prior to transfer.* A transfer of property is a transfer for value although the value is paid prior to the transfer (see Restatement of Trusts, § 299). Where property is subject to a constructive trust, a transferee of the property who pays value is a bona fide purchaser and can hold the property free of the constructive trust, although the value was paid prior to the transfer, if both the payment of value and the transfer were made before the transferee had notice of the constructive trust."

We also quote from Restatement of the Law—Trusts, § 299, Payment of Value Prior to Transfer:

"A transfer of trust property is a transfer for value although the value is paid prior to the transfer.

"*Comment: a.* A transferee of trust property who pays value for the transfer is a bona fide purchaser although the value was paid prior to the transfer, if both the payment of value and the transfer were made before the transferee had notice that the transfer was in breach of trust."

We have examined the authority cited by appellant and have made some independent investigation, and we find no authority which, in our opinion, would make the doctrine of a constructive trust applicable to a mere escrow holder, as contended for by appellant; but if it be assumed, for the sake of argument, that Mrs. Nugent would, under some state of facts, have taken the property subject to a constructive trust in favor of Fidelity, such facts are not present in this case. The fact that Mrs. Nugent, at the time she paid MacGillivray, knew of the existence of the Carter-Dowell escrow and knew that such escrow would have to be discharged, would not deprive her of the status of a bona fide purchaser. All parties knew of the escrow and that, in order to complete the sale, it would have to be taken up.

We are of the opinion that the transfer, within the rules above quoted, would in the instant case refer to the transfer of title to Mrs. Nugent by means of the delivery and recording of the deeds from the Carters to the Dowells and from the Dowells to Mrs. Nugent. If Mrs. Nugent could have taken title to the property impressed with a constructive trust or some equity in favor of Fidelity, it would have been because, at the time she acquired title, she knew the check given by MacGillivray was not good and had been refused because of insufficient funds. This she did not know until after title had been transferred to her. In other words, on May 19th, Mrs. Nugent had no notice of any remaining rights or equity to this property in either Carter or Fidelity.

We find nothing in the case of *Peterson v. Paulson,* 24 Wn. (2d) 166, 163 P. (2d) 830, cited by appellant, contrary to the conclusions reached by us. It is true that, in the cited case, it is stated that to constitute one a bona fide purchaser of property as against an outstanding equity, the purchaser must have paid the purchase price and have acquired the legal title without notice of such prior equity. In the instant case, in so far as Mrs. Nugent knew, there were no outstanding equities when she acquired the legal title to the property. She had the deed from the Carters to the Dowells, and the Dowell deed to herself. This completed the chain of title and placed the record title in her name.

For the reasons herein set forth, the judgment is affirmed as to Mrs. Nugent. No argument is made in appellant's brief that the judgment as to the Dowells is erroneous—in fact, its argument would, in our opinion, preclude such a contention —and the judgment as to the Dowells is therefore also affirmed.

MALLERY, C. J., BEALS, STEINERT, and ROBINSON, JJ., concur.