700 P.2d 877

**PIMA COUNTY, a body politic and corporate, Plaintiff/Appellee,**

**and**

**John J. Arena and Isobel L. Arena, husband and wife, Defendants/Cross-Claimants/Appellees,**

**v.**

**INA/OLDFATHER 4.7 ACRES TRUST # 2292, an Arizona partnership; Ina/Oldfather Associates, an Arizona partnership; Corbec Investments Corporation, Defendants/Cross-Claimants/Appellants.**

**No. 2 CA–CIV 5134.**

Court of Appeals of Arizona, Division 2.

Dec. 20, 1984.

Review Denied March 5, 1984.

Lawrence E. Condit, Tucson, for plaintiff/appellee and defendants/cross-claimants/appellees.

Robert C. Stubbs & Associates, P.C. by G. Lawrence Schubart, Tucson, for defendants/cross-claimants/appellants.

## OPINION

HOWARD, Judge.

This appeal concerns a dispute between a vendor and an assignee of the purchaser over the proceeds of a settlement in a condemnation action.[1]

The appellees, the Arenas, entered into a contract to sell five acres of unimproved land to Evelyn Hanson or her nominees for the sum of $275,000. The agreement pro-

---

1. The condemnation action concerned Pima County's widening of Ina Road upon which the subject property fronted. The Arenas filed an answer and cross-claim against appellants pray-ing that any sums be awarded to them pursuant to their deed of trust and asking for a declaratory judgment.

vided for an earnest money deposit of $2,500. The sum of $77,250 was to be paid at closing and the balance of $195,250 was to be paid in semi-annual installment payments. Prior to the date set for closing, Hanson assigned her interest to Disney Investment Fund which in turn assigned the purchase to defendants and appellant Ina/Oldfather Associates which closed on the purchase. It executed a deed of trust with the Arenas as the beneficiaries and Ina/Oldfather Associates as the trustor. Subsequently, Ina/Oldfather Associates assigned its rights to Corbec Investment Corporation which took the title under the partnership called Ina/Oldfather 4.7 Acres Trust # 2292.

Paragraph 6 of the deed of trust reads as follows:

"That any award of damages in connection with any condemnation ... is assigned and shall be paid to [the] Beneficiary as further security for all obligations secured hereby ... and upon receipt of such moneys [the] Beneficiary may hold the same as such further security, or apply or release the same in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance."

The paragraph in the deed of trust which provides for the disposition of proceeds of fire or other insurance is paragraph 2. It provides:

"To provide, maintain, and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of Trustee's sale hereunder or invalidate any act done pursuant to such notice."

The Arenas moved for summary judgment which the trial court granted based on paragraph 6 of the deed of trust, holding that it was enforceable against appellants and ordering that the entire sum of $37,224 be paid to the Arenas. The trial court refused to grant appellees' request for attorney's fees.

Appellants contend that the trial court erred in awarding the entire amount of the condemnation award to appellees and that the court further erred in failing to order either that the *total* condemnation award be applied to reduce the principal balance or that the *total* award be held as security.

■ When only part of the mortgaged land is taken, in the absence of any agreement in the mortgage or deed of trust, there is a split of authority as to whether or not the proceeds of the condemnation award have to be apportioned between the mortgagee and mortgagor. In a number of jurisdictions the lien holder is held entitled to all of the condemnation award up to the amount of the secured indebtedness. *City of Chicago v. Salinger,* 384 Ill. 515, 52 N.E.2d 184, 154 A.L.R. 1104 (1943); see *Buell Realty Note Collection Trust v. Central Oak Investment Co.,* 483 S.W.2d 24 (Tex.Civ.App.1972); H. Teague, *Condemnation of Mortgaged Property,* 44 Tex.L.Rev. 1535 (1966); D. Leipziger, *The Mortgagee's Remedies for Waste,* 64 Cal.L. Rev. 1086 (1976); 4 J. Sackman and R. Van Brunt, Nichols' The Law of Eminent Domain § 12.43 (rev. 3rd ed. 1981). In other jurisdictions a trust deed holder or mortgagee is entitled to share in an award resulting from condemnation of part of the property constituting the security only to the extent the security has been impaired by the taking. *People ex rel. Department of Transportation v. Redwood Baseline, Ltd.,* 84 Cal.App.3d 662, 149 Cal.Rptr. 11 (1978). However, when the deed of trust or mortgage has a provision determining the disposition of such proceeds, it governs. *People ex rel. Department of Transportation v. Redwood,* supra. The deed of trust here clearly gives the beneficiaries of the trust the right to the proceeds and the option as to its application.

Appellants argue that A.R.S. § 33–702(B) prohibits the provision for the condemnation award which is contained in the Arena deed of trust. We do not agree. The statute provides:

"A mortgage or trust deed may provide for an assignment to the mortgagee or beneficiary of the interest of the mortgagor or trustor in leases, rents, issues, profits or income from the property covered thereby, whether effective before, upon or after a default under such mortgage or trust deed or any contract secured thereby, and such assignment may be enforced without regard to the adequacy of the security or the solvency of the mortgagor or trustor by any one or more of the following methods:

1. The appointment of a receiver.

2. The mortgagee or beneficiary taking possession of the property, or without the mortgagee or beneficiary taking possession of the property.

3. Collecting such monies directly from the parties obligated for payment.

4. Injunction."

Appellants argue that since a condemnation award is not included in the above statute, it was the clear intention of the legislature to forbid a contractual provision giving the entire award to the beneficiaries without regard to the adequacy of the security. We do not agree. The statute deals with property income. A condemnation award is not property income, it is a substitute for the property itself.

For the first time on appeal appellants argue against the enforceability of paragraph 6 of the deed of trust based upon such cases as *Baltimore Life Insurance v. Harn*, 15 Ariz.App. 78, 486 P.2d 190 (1971) and *Patton v. First Federal Savings And Loan Association of Phoenix*, 118 Ariz. 473, 578 P.2d 152 (1978). These cases deal with the "due-on-sale"

clause in mortgages. Not only are these cases not on point, but appellant may not raise new issues for the first time in its reply brief. *Associated Grocers v. Industrial Commission*, 133 Ariz. 421, 652 P.2d 160 (App.1982). We therefore shall not consider this argument.

The judgment contained no provision requiring appellees to credit the *entire* condemnation award against the indebtedness or hold the *entire* award as security. The record also shows that appellees and their counsel had entered into a contingent fee agreement regarding the condemnation award, agreeing that appellees' attorney should receive 33⅓ per cent of any sums collected. Appellees argue that any amounts applied toward the balance due should be reduced by the amount paid to their attorney under the contingent fee agreement. Appellants argue that, by the terms of paragraph 6, the entire amount must be applied against the balance due and owing.

As we have previously noted, the condemnation award is a substitute for the property. As a result of the condemnation, appellants have received less than they paid for. However, by the same token, appellees are entitled to be paid their entire balance of $195,250. This problem is resolved, however, by the requirement of paragraph 6 of the Deed of Trust that appellees either pay the proceeds to appellants, credit the same against the principal balance, or hold it as security until the sums owed are paid, at which time appellants would receive the proceeds. The fact that appellees will not in this case receive the full amount of the Deed of Trust results from the fact that the trial court failed to order that appellants pay appellee's attorney's fees as required by paragraph 3 of the Deed of Trust.[2] However, appellees have not cross-appealed on the issue of attorney's fees.

---

**2.** Under this paragraph the trustor agrees:

"3. To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses of Beneficiary and Trustee, including cost of evidence of title and attorney's fees on a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear or be named, and in any suit brought by Beneficiary or Trustee to foreclose this Deed of Trust."

We shall modify the judgment to declare the rights of the parties under the Deed of Trust.

The judgment is modified to provide that appellees have the right under the Deed of Trust to hold as further security the sum of $37,244 plus interest accruing on said sum, or to apply said amount to the amount of indebtedness under the note and Deed of Trust or to pay said amount or any part thereof to appellants. In no event are appellees entitled to deduct any sums paid or payable to their attorney from the said $37,244.

The judgment is affirmed as modified.

BIRDSALL, C.J., and HATHAWAY, J., concur.