928 P.2d 725

**HUNNICUTT CONSTRUCTION, INC., an Arizona corporation, Plaintiff/Appellant/Cross–Appellee,**

v.

**STEWART TITLE AND TRUST OF TUCSON TRUST NO. 3496, Intervenor/Appellee/Cross–Appellant.**

No. 2 CA–CV 96–0036.

Court of Appeals of Arizona, Division 2, Department A.

Nov. 19, 1996.

Leonard, Felker, Altfeld & Battaile, P.C. by Clifford B. Altfeld and Lynne M. Schwartz, Tucson, and Anne–Marie Brady, Tucson, for Plaintiff/Appellant/Cross–Appellee.

Carmine Cornelio, Tucson, for Intervenor/Appellee/Cross–Appellant.

## OPINION

PELANDER, Presiding Judge.

The primary issue in this case is whether an equitable, unrecorded constructive trust on real property, arising from a party's having been fraudulently induced to furnish material and labor for improvements on the property, has priority over a bona fide purchaser for value's (BFP) subsequent recorded deed of trust on the property. Concluding that the recorded lien had priority, the trial court granted summary judgment for, and quieted title in, appellee Stewart Title and Trust of Tucson Trust No. 3496 (the Trust). For the reasons stated below, we affirm.

### FACTS AND PROCEDURAL HISTORY

The pertinent facts are undisputed. In May 1990, plaintiff/appellant Hunnicutt Construction, Inc. (Hunnicutt), a licensed general contractor, contracted with Ultra Membrane International (Ultra) to construct a warehouse and office facilities on property owned by Ultra. After Hunnicutt completed the project, Ultra was unable to pay the $182,590 balance owed under the contract. Ultra's principal successfully induced Hunnicutt to

refrain from filing and recording a mechanics' lien on the property, *see* A.R.S. §§ 33–981 to 33–1008, in return for Ultra's promise to borrow money to pay Hunnicutt. Ultra never paid Hunnicutt and Hunnicutt never recorded a mechanics' lien.

In November 1990, Ultra applied for a loan from Commonwealth Mortgage Company (Commonwealth) to "refinance current payables on building and working capital." In March 1991, approximately six months after Hunnicutt had completed the construction project and Ultra had taken possession, Commonwealth agreed to loan Ultra $275,000 in return for a promissory note secured by a first position deed of trust on Ultra's improved real property. The loan transaction closed and Commonwealth's deed of trust was recorded in April 1991. Commonwealth had no knowledge before or at the time of closing of any agreements or understandings between Ultra and Hunnicutt, or of any claim by Hunnicutt against the property.

The procedural history of this case is rather convoluted. In March 1992, Hunnicutt filed this action against Ultra and its principal, asserting various theories to recover the $182,590 principal balance owed on the construction contract. Two years later, in March 1994, Hunnicutt amended its complaint to include a claim (count 6) for fraud in the inducement against Ultra. The amended complaint alleged for the first time that Hunnicutt had an equitable lien on the property in the amount of $182,590 plus interest, with priority over all other liens, and sought to impose a constructive trust on the property dating back to the time of the fraud in May 1990. Although Commonwealth received a courtesy copy of the amended complaint, Hunnicutt never named or added it as a party.

During settlement conference proceedings between Hunnicutt, Ultra and its principal, the settlement judge granted Hunnicutt's uncontested motion for partial summary judgment on count 6 of its amended complaint.[1] On July 6, 1994, the settlement judge entered a judgment submitted by Hunnicutt which, *inter alia*, found by clear and convincing evidence that Ultra had fraudulently induced Hunnicutt to enter into the construction contract in May 1990; granted judgment for Hunnicutt against Ultra in the total amount of $332,033.30, including interest and attorney's fees; imposed a "first lien" constructive trust in that amount in favor of Hunnicutt on Ultra's property relating back, *nunc pro tunc*, to May 1990; and provided that the constructive trust "shall be deemed prior in right and time to all other liens on the real property," expressly including Commonwealth's recorded deed of trust. Hunnicutt recorded the judgment that same day.

In March 1994, before Hunnicutt obtained its judgment, Commonwealth had assigned its beneficial interest in the note and deed of trust to the Trust, the beneficiaries of which were Commonwealth's principals. The Trust recorded a notice of trustee's sale in early April, and was the successful bidder at the sale in early July.

On July 7, after obtaining and recording its judgment, Hunnicutt filed an application for writ of special execution, seeking to foreclose the Trust's interest in the property. The Trust then successfully moved to intervene in this action, seeking to quiet title and claiming statutory damages under A.R.S. § 33–420.[2] The trial court granted summary judgment in favor of the Trust in October 1995, finding and concluding that: Hunnicutt had no valid judgment binding on Commonwealth and no judgment of constructive trust

---

**1.** The trial judge to whom the case was assigned previously had declined to consider Hunnicutt's motion because it was not timely under Pima County Local Rules, but later consented to the settlement judge ruling on the motion.

**2.** Section 33–420(A) provides: "A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is

forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action." Although the settlement judge granted the Trust's motion to intervene and ordered that the July 1994 judgment would be amended, that judgment never was amended or vacated.

with priority over Commonwealth; Commonwealth was a BFP without actual or constructive notice of Hunnicutt's claim, which was junior to Commonwealth's claim and extinguished by its trustee's sale; and Commonwealth was entitled to judgment of quiet title against Hunnicutt. The court also awarded the Trust statutory damages of $1,000 under A.R.S. § 33–420(C) and attorney's fees of $19,376. Hunnicutt appealed from the trial court's October 1995 judgment, and the Trust cross-appealed from the court's denial of its request for an award of attorney's fees against Hunnicutt's counsel under A.R.S. § 12–349.

## DISCUSSION

### A. PRIORITY OF LIENS

■ As assignee of Commonwealth's beneficial interest in the note and deed of trust on Ultra's property, the Trust "stands in the shoes" of Commonwealth, taking only those rights and remedies Commonwealth would have had. *Van Waters & Rogers, Inc. v. Interchange Resources, Inc.*, 14 Ariz. App. 414, 417, 484 P.2d 26, 29 (1971). It is undisputed that any interest Hunnicutt had in the property was not recorded at the time Commonwealth acquired its interest, and that Commonwealth recorded its deed of trust more than three years before Hunnicutt recorded the judgment which imposed its constructive trust. Hunnicutt contends, however, that its unrecorded equitable interest established by the constructive trust is superior to the Trust's recorded deed of trust. Hunnicutt's position is based on the premise that an unrecorded equitable interest is not subject to Arizona's statutory recording requirements and takes precedence over a subsequently recorded legal interest, even if the latter interest is that of a bona fide secured lender.

In support of its position, Hunnicutt relies primarily on *Blalak v. Mid Valley Transp., Inc.*, 175 Ariz. 538, 858 P.2d 683 (App.1993). In that case, Division One of this court held that "A.R.S. § 33–412(A) does not, standing alone, affect the validity of unrecorded equitable liens as against creditors or purchasers for value without notice of the liens." *Id.* at 541, 858 P.2d at 686. That broad holding,

however, went beyond the scope of the issue posed in the case, which was "whether the failure to record the existence of a beneficial interest in land held in trust, as provided by A.R.S. § 33–404, subjects that beneficial interest to a judgment lien obtained against the trustee." *Id.* at 539, 858 P.2d at 684. Thus, the court focused on "the enforceability of a judgment lien against trust property where the existence of the trust or the beneficiary has not been disclosed to the world," *id.* at 540, 858 P.2d at 685, and concluded that equitable liens "need not be recorded to prevail over judgment creditors of the actual titleholder." *Id.* at 541, 858 P.2d at 686. The court's statement that Arizona's "recording statutes have not required that an equitable interest in land be recorded to be valid against creditors *or third party bona fide purchasers* " was, in our view, overbroad and unnecessary for its decision. *Id.* at 541, 858 P.2d at 686 (emphasis supplied).

Regardless of what may or may not be *dicta* in *Blalak*, however, that case is distinguishable. First, and perhaps most importantly, *Blalak* and Arizona cases cited therein did not involve mechanics' or materialmen's liens. Arizona's statutes governing such liens grant licensed contractors like Hunnicutt "a lien on such building, structure or improvement for the work or labor done or professional services, materials, ... [or] fixtures ... furnished," A.R.S. § 33–981(A). Such liens "are preferred to all liens, mortgages or other encumbrances upon the property attaching subsequent to the time the labor was commenced or the materials commenced to be furnished." A.R.S. § 33–992(A). *See Scottsdale Memorial Health Systems, Inc. v. Clark*, 157 Ariz. 461, 759 P.2d 607 (1988). "In order to impress and secure" a mechanics' or materialmen's lien, however, the contractor must timely record a notice and claim of lien with the county recorder's office. A.R.S. § 33–993(A); *Irwin v. Murphey*, 81 Ariz. 148, 155, 302 P.2d 534, 538 (1956). Hunnicutt concedes it did not record and perfect its lien as required.

We agree with the Trust that where a legal remedy such as a statutory lien exists, but has not been utilized, a claimant should

not be permitted to substitute an equitable remedy. *See Valley Drive–In Theatre Corp. v. Superior Court*, 79 Ariz. 396, 400, 291 P.2d 213, 215 (1955) ("[W]hen a statute creates a right and also provides a complete and valid remedy for the right created, the remedy thereby given is exclusive."); *Lewis v. Midway Lumber, Inc.*, 114 Ariz. 426, 432, 561 P.2d 750, 756 (App.1977). To rule otherwise would allow a contractor who fails to comply with the mechanics' or materialmen's lien statutes to nonetheless obtain and prioritize a lien.

Second, *Blalak* and the other Arizona cases on which it relied involved the superiority of an unrecorded equitable interest over a judgment creditor's lien. *See Jarvis v. Chanslor & Lyon Co.*, 20 Ariz. 134, 177 P. 27 (1919); *Luke v. Smith*, 13 Ariz. 155, 108 P. 494 (1910), *aff'd*, 227 U.S. 379, 33 S.Ct. 356, 57 L.Ed. 558 (1913); *Valley National Bank v. Hay*, 13 Ariz.App. 39, 474 P.2d 46 (1970). "Judgment liens are derived from statutes which create them. Unless otherwise provided by statute, a judgment lien is subordinate to prior conveyances even when these are not recorded." *Rowe v. Schultz*, 131 Ariz. 536, 538, 642 P.2d 881, 883 (App.1982). Unlike a BFP or lender for value, a judgment creditor has not relied on the recorded title in purchasing or extending credit on the property. Therefore,

> a bona fide purchaser's rights have always been held superior to prior equitable interests.... The same rationale does not have equal validity when applied to judgment creditors.... A judgment creditor possessing a statutory lien on property does not occupy a position equivalent to that of a purchaser for value.

*Osin v. Johnson*, 243 F.2d 653, 657 (D.C.Cir. 1957). In other words,

> Where a person holds property subject to a constructive trust, his creditors are not purchasers for value and are subject to the constructive trust.... So also, a creditor

who attaches the property or obtains and records a judgment or levies execution upon the property is not a bona fide purchaser, although he had no notice of the constructive trust.

Restatement (First) of Restitution § 173 cmt. j (1937). *See also* 4 Scott, The Law of Trusts § 308.1 at 194 (4th ed. 1989) ("A judgment creditor is not a purchaser for value.").

Third, *Blalak* relied on Texas authority in reaching its conclusion, because Arizona's recording act was adopted from the Texas statute.[3] The court in *Blalak* cited a Texas case which had held that an equitable interest need not be recorded to prevail over a subsequent judgment lien because the recording act did not apply to equitable interests. *Johnson v. Darr*, 114 Tex. 516, 272 S.W. 1098 (1925). The Texas court, however, "clearly distinguishe[d] between the positions of a bona fide purchaser for value and a creditor." *Id.* at 525, 272 S.W. at 1101. Similarly, more recent Texas cases have held that a BFP, unlike a judgment lienholder, does not take subject to an equitable lien. *See Henry I. Siegel Co., Inc. v. Holliday*, 663 S.W.2d 824, 828 (Tex.1984); *Gordy v. Morton*, 624 S.W.2d 705 (Tex.App.1981). Courts in other states are in agreement. *See Lewis v. Superior Court*, 30 Cal.App.4th 1850, 1879, 37 Cal. Rptr.2d 63, 82 (1994); *Kolker v. Gorn*, 193 Md. 391, 398, 67 A.2d 258, 261 (1949) ("it is well established that a judgment creditor is not in the position of a bona fide purchaser, and his claim is subject to prior, undisclosed equities."); *Aberdeen Federal Savings & Loan Ass'n v. Empire Manufactured Homes, Inc.*, 36 Wash.App. 81, 85, 672 P.2d 409, 411 (1983).

Therefore, we hold that the recorded interest of a BFP without notice has priority over an unrecorded equitable lien which could have been obtained under Arizona's mechanics' and materialmen's lien statutes.[4] That Hunnicutt's equitable inter-

---

3. Tex.Prop.Code Ann. § 13.001 (West.1996).

4. In its answering brief, the Trust raises other issues, arguing that the judgment Hunnicutt obtained in July 1994 was not a valid and binding judgment against it, a non-party to the action, and that Hunnicutt was never entitled to a con-

structive trust in the first place. Because we agree with the trial court's ruling that the Trust's recorded deed of trust had priority over Hunnicutt's unrecorded equitable interest, we need not reach those issues.

est arose from a constructive trust does not alter this conclusion.[5] In *Warren v. Whitehall Income Fund 86,* 170 Ariz. 241, 823 P.2d 689 (App.1991), this court held that because a lis pendens had been filed, a subsequent grantee had actual and constructive notice of a constructive trust. As we stated, "when the purchaser of land has notice of a prior claim to the land, he takes it subject to that claim," and "[s]uch person is not a bona fide purchaser." *Id.* at 243, 823 P.2d at 691 (citations omitted). In so holding, however, we implicitly assumed that a *BFP* would *not* take subject to an unrecorded equitable interest of which there has been no notice.

■ The relevant treatises seem to agree that a "bona fide purchaser may have the effect of cutting off a constructive trust already existing." 5 Scott, The Law of Trusts § 474 at 378 (4th ed.1989). *See also* Bogert, The Law of Trusts and Trustees § 473 at 91–92 (2d ed.1978) ("the complainant may be unable to recover the property if the person acquiring his property by fraudulent means has transferred it to an innocent donee or a bona fide purchaser."); Dobbs, Law of Remedies § 4.7(1) at 661 (2d ed.1993) ("purely equitable remedies do not lie to recover property or an interest therein from a bona fide purchaser for value who had no notice of the plaintiff's claim. Thus the right to a constructive trust or an equitable lien on the property, ... does not run against the bona fide purchaser."). This view is also consistent with the Restatement of Restitution:

> Where a person acquires title to property under such circumstances that otherwise he would hold it upon a constructive trust or subject to an equitable lien, he does not so hold it if he gives value for the property without notice of such circumstances.

**5.** "[A] constructive trust is an equitable remedial device, generally used to prevent unjust enrichment," *Burch & Cracchiolo, P.A. v. Pugliani,* 144 Ariz. 281, 285, 697 P.2d 674, 678 (1985), and arises "when the duty to make restitution arises—when the wrong occurs." *Id.* at 286, 697 P.2d at 679. *See also King v. Uhlmann,* 103 Ariz. 136, 149, 437 P.2d 928, 941 (1968); *Pioneer Annuity Life v. National Equity Life,* 159 Ariz. 148, 154, 765 P.2d 550, 556 (App.1988).

**6.** In the absence of law to the contrary, Arizona generally follows the Restatement. *Webster v.*

Restatement (First) of Restitution § 172 (1937).[6] Comment a to Section 172 further notes that this rule

> is of wide application, being a limitation upon the principle that a person who has been wrongfully deprived of his property is entitled to restitution. The question in such cases is which of two innocent persons should suffer a loss which must be borne by one of them. The principle which is applied by courts of equity is that they will not throw the loss upon a person who has innocently acquired title to property for value. The bona fide purchaser is not only entitled to retain the property free from trust, but he is under no personal liability for its value.[7]

Cases from other jurisdictions which have addressed this issue are consistent with the position of the Restatement and the commentators cited above. *See In re Seaway Exp. Corp.,* 912 F.2d 1125, 1128–29 (9th Cir.1990) (applying Washington law); *In re Marriage of Allen,* 724 P.2d 651, 658 (Colo.1986); *Middlebrooks v. Lonas,* 246 Ga. 720, 722, 272 S.E.2d 687, 689 (1980); *Frankel v. Otiswear, Inc.,* 216 Ill.App.3d 204, 214–215, 160 Ill.Dec. 1, 576 N.E.2d 955, 961–62 (1991); *Cox v. Waudby,* 433 N.W.2d 716, 720 (Iowa 1988); *Thompson v. Nesheim,* 280 Minn. 407, 414, 159 N.W.2d 910, 916 (1968); *Lawrence v. Clepper,* 263 Mont. 45, 54, 865 P.2d 1150, 1156 (1993); *Hirsch v. Travelers Ins. Co.,* 134 N.J.Super. 466, 470, 341 A.2d 691, 693 (1975); *Union Savings & Loan Ass'n v. McDonough,* 101 Ohio App.3d 273, 276, 655 N.E.2d 426, 428 (1995); *American Bonding Co. of Baltimore v. Dowell,* 31 Wash.2d 585, 198 P.2d 191 (1948). Our holding comports with all of these authorities.

*Culbertson,* 158 Ariz. 159, 162, 761 P.2d 1063, 1066 (1988). To the extent *Blalak*'s broad language can be construed as contrary to the Restatement view concerning BFP's and constructive trusts, we reject it, at least in the context of mechanics' and materialmen's liens.

**7.** Illustration five to § 172 describes the situation at issue: "A obtains Blackacre from B by fraud. A mortgages Blackacre to C, a bona fide purchaser, to secure a loan of $10,000 made by C to A at the time the mortgage is given. C takes an interest as mortgagee free of constructive trust."

## B. THE TRUST'S STATUS AS BFP

█ In its reply brief, Hunnicutt argues that the Trust was not a BFP because it had actual and constructive notice of Hunnicutt's equitable lien before acquiring its legal interest in the property as successful bidder at the trustee's sale in July 1994. We reject this argument for two reasons. First, we generally will not address an issue an appellant raises for the first time in the reply brief. Ariz.R.Civ.App.P. 13(c), 17B A.R.S.; *United Bank v. Mesa N.O. Nelson Company, Inc.*, 121 Ariz. 438, 443, 590 P.2d 1384, 1389 (1979); *Pima County v. INA/Oldfather 4.7 Acres Trust No. 2292*, 145 Ariz. 179, 182, 700 P.2d 877, 880 (App.1984). Hunnicutt's challenge to the Trust's BFP status is untimely and not properly raised.

█ Second, even if this issue had been properly raised on appeal, the trial court correctly resolved it. A BFP must purchase property in good faith, for value, and without notice. *Davis v. Kleindienst*, 64 Ariz. 251, 258, 169 P.2d 78, 82 (1946). A lender with a security interest in property can be a BFP. *See, e.g., Tucson Federal Savings & Loan Ass'n v. Sundell*, 106 Ariz. 137, 140–42, 472 P.2d 6, 9–10 (1970); Restatement (First) of Restitution § 172 cmt. c (1937) (rule as to BFP applicable "not only to absolute transfers, but also to transfers as security, to mortgages, pledges and legal liens."). A person has notice "when he knows facts which would lead a reasonably intelligent and diligent person to inquire whether there are circumstances which would give rise to a constructive trust." Restatement (First) of Restitution § 174 (1937).

The relevant focus here is whether Commonwealth had notice when it recorded its deed of trust in April 1991 and not, as Hunnicutt asserts, at the time of the trustee's sale in July 1994. *See Mecham v. United Bank*, 107 Ariz. 437, 442, 489 P.2d 247, 252 (1971) ("The critical time for such notice is when the party comes into possession as a holder."). *See also Valley National Bank of Arizona v. Educational Credit Bureau, Inc.*, 23 Ariz. App. 148, 152, 531 P.2d 193, 197 (1975). When it acquired and recorded its deed of trust, Commonwealth had no actual notice of Hunnicutt's claim to an equitable lien. Hun-

nicutt had no recorded interest in the property until it recorded its judgment in July 1994. Prior to the closing of its loan in April 1991, Commonwealth's title search revealed several mechanics' liens of other contractors on the property, but no liens or other claimed interest on Hunnicutt's part.

Similarly, Hunnicutt failed to establish that when Commonwealth's deed of trust was recorded in April 1991, it should have known of Hunnicutt's claimed equitable interest or of any fraudulent conduct on Ultra's part that could give rise to a constructive trust. Hunnicutt points to Commonwealth's October 1990 financial statement relating to the Ultra loan, which reflected that Ultra owed a contractor $217,682. The trial court did not err in finding that alone was not constructive notice to Commonwealth that Hunnicutt had a constructive trust or any other equitable lien on the property.

## C. CROSS–APPEAL

█ In its cross-appeal, the Trust contends the trial court erred in refusing to award sanctions against Hunnicutt's counsel. We will uphold a trial court's decision whether to award sanctions unless it clearly abused its discretion. *Reed v. Mitchell & Timbanard, P.C.*, 183 Ariz. 313, 320, 903 P.2d 621, 628 (App.1995). In view of the judgment Hunnicutt obtained in July 1994 and its reliance, albeit misplaced, on *Blalak*, we cannot say the trial court abused its discretion in declining to assess Hunnicutt's counsel with fees or other sanctions under A.R.S. § 12–349 or Rule 11. Accordingly, the trial court's October 1995 judgment is affirmed.

LIVERMORE and FLOREZ, JJ., concur.