**In Re TOWER AIR, INC., Debtor.**

**No. 00–1280 (RJN).**

United States Bankruptcy Court,
D. Delaware.

Aug. 27, 2001.

Robert T. Aulgur, Jr., Whittington & Aulgur, Odessa, DE, for Toyota Motor Credit.

Elio Battista Jr., The Bayard Firm, Wilmington, DE, for Finova Capital Corp.

William Pierce Bowden, Ashby & Geddes, Wilmington, DE, for China Airlines Ltd.

William E. Chipman Jr., Greenberg Traurig, LLP, Wilmington, DE, for Eurocontrol.

Aaron A. Garber, Pepper Hamilton LLP, Wilmington, DE, for Tower Air, Inc. and GMAC Business Credit LLC.

Kimberly Ellen Connolly Lawson, Werb & Sullivan, Wilmington, DE, for Nordisk Aviation Products, Inc.

Christina M. Maycen, Morris James Hitchens & Williams, LLP, Wilmington, DE, for Time Aviation Services, Inc.

Katharine L. Mayer, Elzufon Austin Reardon Tarlov & Mondell, Wilmington, DE, for Miami-Dade County.

Richard W. Riley, Duane, Morris & Heckscher LLP, Wilmington, DE, for Tower Air, Inc. and Charles Stanziale.

Diane E. Vuocolo, Duane, Morris & Heckscher, LLP, Wilimington, DE, Arnold M. Willig, Hacker & Willig, Inc., for Tower Air, Inc.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

RANDALL J. NEWSOME, Bankruptcy Judge.

This Chapter 7 case is before the Court for a determination of the rights of FINOVA Capital Corporation ("FINOVA") and the Chapter 7 Trustee ("Trustee"), Charles A. Stanziale, Jr., to certain insurance proceeds being held by the Trustee. The pertinent facts are largely undisputed. FINOVA was a major equipment lender for Debtor Tower Air, Inc. ("Tower"), a now-defunct international airline. As of February 29, 2000, the date Tower filed its

voluntary Chapter 11 petition[1], FINOVA claims it was owed some $56,000,000. In March of 1996 the parties entered into a loan consolidation agreement in which, among other things, FINOVA loaned Tower $21,000,000 to purchase a Boeing 747–200 and four jet engines. The loan documents provide for the cross-collateralization of each item of security, and grant a security interest in "all rents, issues, proceeds, insurance proceeds, properties, revenues and other income . . . ." Section 5.4(a) of the Aircraft Loan and Security Agreement between FINOVA and Tower is of particular importance to this dispute:

> In the event of any payment made to the Borrower by an insurer in connection with the Aircraft pursuant to a claim by the Borrower, the Borrower shall submit to the Lender for approval a proposal for the use of such insurance proceeds. Notwithstanding the foregoing, subject to subparagraph 5.4(b)[2] below, the Lender may in its sole discretion, apply such sum to the satisfaction of the Obligations and to the extent not so applied shall be paid over to the Borrower.

On August 23, 1997 a Pratt & Whitney model JT9D–7q aircraft engine (serial number 702279), which was a part of FINOVA's collateral, was damaged in-flight on an aircraft operated by Tower. Tower repaired the engine at a cost of $2,251,747.51. That engine, along with much of the rest of FINOVA's collateral, has been turned over to FINOVA. Even after crediting the Debtor with the return

of this property, however, FINOVA is still owed a substantial sum of money.[3]

At some point the Trustee learned that the damage to the engine might be covered by one of the Debtor's insurance policies. Although it is unclear which of the yearly hull and aircraft equipment policies covered the claim, it is undisputed that the applicable policy had a $1 million deductible, listed Tower as the "named insured," and designated FINOVA as the "certificate holder" or "contract party." Each of the hull and equipment policies contained language to the effect that payments for losses were to be made in accordance with the parties' loan agreements. The insurance company subsequently agreed to pay the Debtor $951,503.26 in full settlement of the insurance claim on engine 702279.

This contested matter was initiated by the Trustee's filing of a motion to approve the compromise with the insurance company. FINOVA opposed that motion, asserting that it is entitled to the $951,503.26, not the Trustee. On June 26, 2001 the Court signed a consent order which approved the compromise with the insurance company, and permitted the Trustee to hold the proceeds pending a determination of the parties respective rights to the money. The parties agree that Arizona law is applicable to this dispute.

██ In response to FINOVA's opposition, the Trustee first asserts that since FINOVA has received the repaired engine, it is not entitled to the insurance proceeds as well. Neither the parties' agreement nor the law supports this assertion. Sec-

---

1. Charles A. Stanziale, Jr. was appointed Chapter 11 Trustee on May 5, 2000. The case converted to Chapter 7 on December 20, 2000, and on that date Stanziale was appointed Chapter 7 Trustee.

2. This provision concerns total loss of an aircraft, and appears to have no applicability to this dispute.

3. FINOVA claims it is still owed $23.5 million. The Trustee declined to stipulate to that figure, but acknowledged that FINOVA is undersecured.

tion 5.4(a) of the Aircraft Loan and Security Agreement entitles FINOVA to determine how insurance proceeds are to be applied. Subject to full satisfaction of its loan, FINOVA may look both to the equipment subject to its security interest as well as insurance proceeds arising from loss of that equipment. *Cf. Allstate Ins. Co. v. James*, 779 F.2d 1536 (11th Cir.1986). This result is not only consistent with the obvious intentions of the parties to the agreement, but also appears consistent with both the law of mortgages[4] and insurance[5]. At least one Arizona appellate court has recognized and given full effect to a real property mortgage containing a provision similar to Section 5.4(a). *See Pima County v. INA/Oldfather 4.7 Acres Trust # 2292*, 145 Ariz. 179, 700 P.2d 877 (1984). Although no cases (either from Arizona or any other jurisdiction) were found construing similar provisions in loans governed by the Uniform Commercial Code, nothing suggests that the courts of Arizona would not give full effect to such provisions in that context as well.

The primary case cited in support of the Trustee's position, *In re Costa*, 54 B.R. 22 (Bankr.N.J.1985), is inapposite. *Costa* involved insurance proceeds for fire damage to an apartment building which the debtor repaired with his own funds. Without describing the terms of the mortgage or the nature and extent of the mortgagee's interest in the debtor's property, the Court merely holds that "the repair and restoration of the property, substantially to its pre-fire condition, provides "adequate protection" for the first mortgagee's interest...." *In re Costa*, 54 B.R. at 23. The *Costa* case does not address an undersecured, cross-collateralized creditor's entitlement to both the collateral and insurance proceeds for damage to the collateral; nor does it address the effect of a provision in the parties' agreements giving the secured party control over the disposition of insurance proceeds.

■ Although the Trustee previously acknowledged in a June 9, 2001 stipulation and order that FINOVA has a first priority security interest in the engine, he contends that FINOVA did not properly perfect a security interest in insurance proceeds in that collateral. This argument also must be rejected. The loan documents clearly extend FINOVA's security interest to proceeds of its collateral as well as insurance proceeds. Arizona Revised Statutes ("A.R.S.") § 47–9306(A) "makes clear that insurance proceeds from casualty loss of collateral are proceeds...",[6] and § 47–9203(C) states that "[u]nless otherwise agreed, a security agreement gives the secured party the rights to proceeds provided by § 47–9306." Having complied with all of the requirements of A.R.S. § 47–9203, FINOVA is entitled to the insurance proceeds derived from its collateral. *Valley Nat'l Bank of Ariz. v. Cotton Growers Hail Ins. Inc.*, 155 Ariz. 526, 747 P.2d 1225, 1231

---

4. *See* Restatement (Third) of Property § 4.7 cmt. B, illus. 2 (1997)

5. *Valley Nat'l Bank of Ariz. v. Insurance Co. of N. Am.*, 172 Ariz. 212, 836 P.2d 425, 428 (1992); *see Grange Mut. Cas. Co. v. Central Trust Co.*, 774 S.W.2d 838, 840 (1989)("We have determined that the standard clause of the Grange insurance policy makes the loss payee (bank) an insured. The right of the mortgagee under a standard mortgage clause is not dependent upon his sustaining loss.

That is, the mortgagee under such a clause acquires a right to the insurance proceeds even though he suffers no actual loss, as when the building was restored to its former condition by the mortgagor."); *see also First State Bank of Idabel, Oklahoma v. State Farm and Cas. Co.*, 840 P.2d 1267 (1992); *12 Couch on Insurance* § 178:56 (3rd ed.1996).

6. Uniform Commercial Code Comment, A.R.S. § 47–9306.

(1987). The Trustee's citation to A.R.S. § 47–9104, which makes Article 9 of the Uniform Commercial Code inapplicable "[t]o a transfer of an interest or claim in or under any policy of insurance," is unavailing. The statute only applies to "a direct security interest in an insurance policy by making the policy itself the immediate collateral securing the transaction." *PPG Indus., Inc. v. Hartford Fire Ins. Co.*, 531 F.2d 58 (2nd Cir.1976). Furthermore, it specifically excepts from its application the derivative insurance proceeds described in § 47–9306. The Trustee's reliance upon *England v. Valley Nat'l Bank of Phoenix*, 94 Ariz. 267, 383 P.2d 183 (1963) and *Allen v. Hamman Lumber Co.*, 44 Ariz. 145, 34 P.2d 397 (1934) is misplaced, since both of those cases involve assignment of insurance policies rather than a security interest in insurance proceeds derived from the secured party's collateral.

Finally, the Trustee asserts, without citation to any case, that this Court should cut off FINOVA's right to the insurance proceeds pursuant to 11 U.S.C. § 552(b). That section entitles a secured party to proceeds of its prepetition collateral if applicable nonbankruptcy law and the security agreement so provide, "except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise." 11 U.S.C. § 552(b). The equity exception of § 552(b) was intended to strike "an appropriate balance between the rights of secured creditors and the rehabilitative purposes of the Bankruptcy Code." *United Va. Bank v. Slab Fork Coal Co.*, 784 F.2d 1188 (4th Cir.1986). Courts generally limit the application of this exception to Chapter 11 cases in which the evidence establishes that the lender is oversecured, and will obtain a windfall "from collateral that has appreciated in value as a result of the trustee's/debtors-in-possession's use of other assets of the estate (which normally would go to general creditors) to cause the appreciated value." *Delbridge v. Production Credit Assoc.*, 104 B.R. 824, 826 (E.D.Mich.1989); see also *J. Catton Farms, Inc. v. First Nat. Bank of Chicago*, 779 F.2d 1242, 1247 (7th Cir.1985); *In re Patio and Porch Sys., Inc.*, 194 B.R. 569, 575 (Bankr.D.Md.1996); *In re Airport Inn Assocs., Ltd.*, 132 B.R. 951, 959 (Bankr.D.Colo.1990); *In re Wiegmann*, 95 B.R. 90 (Bankr.S.D.Ind.1989).

The Trustee has failed to meet any of the prerequisites for application of the equity exception. This is a Chapter 7 case, and the Debtor is beyond all hope of rehabilitation. There is no evidence that assets of the *estate*, as opposed to prepetition assets, were used to enhance the value of the collateral. To the contrary, it appears that the engine was repaired long before the bankruptcy was ever filed. Far from being oversecured, the creditor is grossly undersecured, probably by a margin of millions of dollars. While it may receive a net enhancement from this one jet engine, it has suffered serious losses from the liquidation of the rest of the collateral securing its loans. In balancing the equities between the parties, it's worth noting that FINOVA has had its own share of financial troubles, having only recently emerged from a Chapter 11 case pending before this Court. Finally, there has been no showing that the insurance proceeds in question might otherwise have been available to pay Tower's general unsecured creditors.

For the reasons stated above, the Court finds that FINOVA is entitled to the $951,503.26 in insurance proceeds being held by the Trustee, plus any interest that has accrued on those funds. The Trustee is directed to release said funds forthwith. Pursuant to Bankruptcy Rule 7052, the

foregoing shall constitute this Court's findings of fact and conclusions of law.

**IT IS SO ORDERED.**